1  CAROL A. SOBEL SBN 84483
   LAW OFFICE OF CAROL A. SOBEL
2  429 Santa Monica Blvd, Suite 550
   Santa Monica, CA 90401
3  T. (310 393-3055 F. 310 393-3605
   E. Carolsobel@aol.com
4
5
6
7

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

10
   TONY LAVAN, CATERIUS SMITH,        Case No.: CV11: 02874 PSG AJWx
11 WILLIE VASSIE, ERNEST
   SEYMORE, LAMOEN HALL,              **COMPLAINT: CIVIL RIGHTS**
12 SHAMAL BALLANTINE, BYRON
   REESE, REGINALD WILSON,            **CLASS ACTION: F.R.CIV.P.
13                                    23(b)(2)**

14        Plaintiffs,                 **42 U.S.C. § 1983 AND FOURTH,
                                      FIFTH AND FOURTEENTH**
15     vs.                           **AMENDMENTS**

16 CITY OF LOS ANGELES,              **CALIFORNIA CONSTITUTION
                                      ARTICLE I, §§ 7 AND 13**
17        Defendants.
                                      **CALIFORNIA CIVIL CODE §§52,
18                                    52.1**

19 _____/        **CALIFORNIA CIVIL CODE § 2080**

20                                    **CONVERSION**

21
22
23
24
25
26
27
28

**JURISDICTION AND VENUE**

1.     This is an action for injunctive relief pursuant to 42 U.S.C. § 1983 and F.R.Civ.P. 23(b)(2), as well as damages, based upon the ongoing violations by the Defendant of the rights secured to Plaintiffs by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.  Jurisdiction exists based on 28 U.S.C. § 1331 and 1343 in that this case is brought pursuant to 42 U.S.C. §1983 and raises questions of federal constitutional law under the Fourth, Fifth and Fourteenth Amendments.  Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.  The court has supplemental jurisdiction over Plaintiffs' state law claims  pursuant to 28 U.S.C. §1367.

2.     Venue is proper in the Central District in that the events and conduct complained of in this action all occurred in the Central District.

**INTRODUCTION**

3.     This case represents a road the CITY has traveled down before.  In 1987 and again in 2000, injunctions were issued against the defendant City of Los Angeles ("CITY"), barring the CITY from summarily confiscating and destroying the property of homeless individuals in the Skid Row area without due process.  In 2006, the City settled a class action lawsuit brought on behalf of a number of homeless individuals whose property was confiscated and destroyed in a single sweep at the Venice Beach on Labor Day weekend in 2004.  Then, as now, if the individuals were present and attempted to save their property, they were threatened by the police with arrest.  Despite these repeated injunctions and actions against the CITY, once again, the most vulnerable population in our community comes to court to request yet another order directing the CITY to stop seizing and demolishing the few belongings they have left.

4.     Plaintiffs are eight homeless individuals living in the City of Los Angeles. Over the course of the last two months, their personal possessions were confiscated and immediately destroyed by CITY Public Works employees at the direction of the Los Angeles Police Department ("LAPD") as a part of an ongoing practice targeting the

1

homeless on Skid Row.  Plaintiffs seek to represent a class of similarly situated homeless men and women who have suffered and will continue to suffer the same type of loss as a result of the same unlawful practice and policy.

5.     As a result of the illegal seizures, Plaintiffs have lost indispensable personal property such as shelters, medicine, clothing, personal papers, family photos and portable electronics.  Some of the property is irreplaceable.  There is  no legitimate reason to seize the property in the first place, much less immediately destroy it, often while Plaintiffs are present, pleading to spare their possessions and watching helplessly as what little they have is swept up and crushed. The only real reason for this policy is to destroy the property of individuals such as Plaintiffs, who are homeless and who are regarded by the CITY as nothing more than garbage to be removed from City streets.

6.     A Temporary Restraining Order is needed to prevent imminent harm to Plaintiffs.  Defendant has made clear through the repeated seizure and destruction of Plaintiffs' property that this is part of an ongoing campaign on Skid Row.  As recently as March 17, 2011, LAPD officers destroyed Plaintiffs' property as they attended to such basics as taking a shower at the Union Rescue Mission, going to court, and getting a meal.  Unless restrained by an Order of this Court, these unlawful acts will continue.

## DEFENDANT'S PAST UNLAWFUL CONDUCT

**The 1987 Temporary Restraining Order**

7.     On February 25, 1987, the Los Angeles Superior Court issued a Temporary Restraining Order in *Adam Young Bennion v. City of Los Angeles*, C637718.  The terms of the restraining order included a requirement that the City give 12 hours written notice before removing property on the presupposition that it has been abandoned on the public streets of Skid Row. Exhibit A, p.28 ("III. Notice Requirements").  The *Bennion* Order required City employees to post a "prominent notice in a conspicuous place on the cite.  The notice shall include the specific citation to the law allegedly violated and state that the property will be subject to disposal if the violation is not corrected within

2

twelve hours from the time the notice is posted.  *Id.*

**The *Justin* Case**

8.      In 2000, the City again began a campaign of confiscating the property of homeless persons, ordering them to move away from their belongings, and then immediately crushing all of the property in dump trucks.  In response to the CITY's unlawful actions, several individuals filed a lawsuit entitled *Justin v. City of Los Angeles*, CV 00-12352 LGB (AIJx).  On November 5, 2001, the Honorable Lourdes Baird entered a permanent injunction against the City, in corporating the terms of the *Bennion* retraining order and enjoining, *inter alia,* the City would "not confiscate personal property that does not appear abandoned and destroy it without notice.  Where applicable, defendants will give notoice in compliance with the temporary restraining order issued in *Bennion v. City of Los Angeles* (C637718).  Any personal property that does not appear intentionally abandoned collected by defendants will be retained for 90 days as provided in California Civil Code section 2080.2."  Exhibit A, p.18, ¶5.  At the request of the CITY, the injunction expired after 48 months.  *Id.* at lines 23-28.

**The *Noe* Case**

9.      Shortly after midnight just before Labor Day in 2004, the LAPD conducted a sweep of the Venice Beach area, seizing and immediately destroying the property of several dozen homeless individuals.   None of the property was abandoned.  Many of the owners of the property were present and were allowed to take some of their property, but were threatened with arrest when they asked to take additional items.  A class action lawsuit was filed seeking compensation for the injuries resulting from the loss of personal possessions.  *Richard Noe v. City of Los Angeles*, cv 05-08374.  In November, 2006, the Honorable Andrew Guilford approved a settlement for the class of individuals whose property was destroyed in the *Noe* case.  Exhibit C.

3

# PARTIES

**Plaintiffs:**

10.     Plaintiff TONY LAVAN is an homeless individual currently residing on the streets of the Skid Row area of Los Angeles.  On March 17, 2011, his EDAR was confiscated and destroyed while Mr. LAVAN was at the Union Rescue Mission using the shower facilities.  He was gone from his property for no more than 30 minutes, if that.  His property was not abandoned.  He sues on behalf of himself and all similarly situated individuals.

11.     Plaintiff CATERIUS SMITH is an homeless individual currently residing on the streets of the Skid Row area of Los Angeles.  On March 17, 2011, his EDAR was confiscated and destroyed while Mr. SMITH was present.  Mr. SMITH had just returned from court, observed the LAPD officers and Public Works employees seizing the EDARS.  Mr. SMITH pleaded to rescue his property but was not pernitted to gather more than a few items.  His property was not abandoned.  He sues on behalf of himself and all similarly situated individuals.

12.     Plaintiff WILLIE VASSIE is an homeless individual currently residing on the streets of the Skid Row area of Los Angeles.  On March 17, 2011, his EDAR, bicycle and shopping cart with all of his possessions was confiscated and destroyed by LAPD officers and Public Works employees. He lost medications and all of his personal property.  Mr. VASSIE's property was not abandoned.  He sues on behalf of himself and all similarly situated individuals.

13.     Plaintiff SHAMAL BALLANTINE is an homeless individual currently residing on the streets of the Skid Row area of Los Angeles.  On March 17, 2011, his EDAR with all of his possessions was confiscated and destroyed by LAPD officers and Public Works employees.  Mr. BALLANTINE had gone to the bank a few blocks from where his EDAR was located.  He was away from this property for no more than about 20 minutes; his property was not abandoned.  He sues on behalf of himself and all

4

similarly situated individuals.

14.    Plaintiff ERNEST SEYMORE is an homeless individual presently residing on the streets of the Skid Row area of Los Angeles.  On February 6, 2011, his shopping cart with all of his possessions was confiscated and destroyed by LAPD officers and Public Works employees.  Mr. SEYMORE was just a few feet from his cart, about to cross the street, when the officers and a skip loader came down the street and grabbed his cart.  There were five other carts he had been watching for other individuals.  All were taken and everything in them was destroyed as Mr. SEYMORE watched helplessly.  His property was not abandoned.  He sues on behalf of himself and all similarly situated individuals.

15.    Plaintiff LAMOEN HALL is an homeless individual presently residing on the streets of the Skid Row area of Los Angeles.  On February 24, 2011, his shopping cart with all of his possessions was confiscated and destroyed by LAPD officers and Public Works employees.  Mr. HALL had left his cart on the corner of 6th and Gladys Streets for no more than 10 minutes to fill several jugs with water at the Hippie Kitchen.  When he returned, he observed LAPD officers and a skip loader in the street.  All of his property had been dumped out of his carts.  He was not permitted to recover any of his property, even though it was in the street and had not yet been put in the skip loader and destroyed.  His property was not abandoned.  He sues on behalf of himself and all similarly situated individuals.

16.    Plaintiff BYRON REESE is an homeless individual currently residing on the streets of the Skid Row area of Los Angeles.  He works as a custodian to support himself.  On February 24, 2011, his shopping cart with all of his possessions was confiscated and destroyed by LAPD officers and Public Works employees.  Mr. REESE's cart was located on the corner of 6th and Gladys Streets. He left his cart for a few minutes to use the restroom at the park across the street. When he returned, he observed LAPD officers and a skip loader taking his cart and that of Plaintiff HALL.

5

All of Mr. Reese's important personal papers, identification documents, and other crucial personal belongings were in a leather satchel.  The satchel was visible and within reach.  When Mr. Reese attempted to retrieve he satchel, he was threatened with arrest by Officer Acosta.  He was told that he would have to go to the City dump to retrieve his possessions.  Mr. REESE then immediately rode his bicycle out to the City dump.  When he arrived there, it was closing and he was informed by the staff that everything brought in was destroyed.  His property was not abandoned when it was taken by Defendant's employees.  He sues on behalf of himself and all similarly situated individuals.

17.    Plaintiff REGINALD WILSON is an individual who is homeless and was residing on the streets of the Skid Row area of Los Angeles on March 17, 2011.  On that morning, his EDAR was confiscated and destroyed while Mr. WILSON was away from the area for a short while.  His property was not abandoned.  Everything he had was lost when his property was confiscated and summarily destroyed, including his clothes, hygiene products and personal papers. He sues on behalf of himself and all similarly situated individuals.

**Defendant:**

18.    The City of Los Angeles is a municipal entity organized under the laws of the State of California.  The CITY is a legal entity with the capacity to sue and be sued. The departments of the City of Los Angeles include the Los Angeles Police Department and the Los Angeles Department of Public Works, employees of which have engaged in the acts constituting the violations of plaintiffs' rights alleged in this action.

### GENERAL ALLEGATIONS

19.    Beginning in February, 2011, CITY employees from the LAPD and the Department of Public Works began seizing and summarily destroying any property they came upon on the public sidewalks of Skid Row without notice to the property owners. When individuals leave their property in the care of others, the CITY seizes it, warning

that no one may leave their property, even momentarily, and even if someone else is present and watching the property.  The property so seized is not abandoned and the CITY knows it.  Even when individuals are present or return prior to the time that the property is crushed by the skip loader, LAPD officers threaten arrest if the individuals attempt to save their property from destruction.  The intent is clear: destroy what little homeless have in this world as a means of forcing them out of the CITY.

20.    Each of the acts complained of herein was taken, and each violation of plaintiffs' rights occurred, pursuant to the policies, practices or customs of the defendant CITY, as executed by one or more the subdivisions of the CITY.

21.    In doing each of the constitutional violations complained of herein, Defendant CITY, its officials, agents, and employees were acting under color of law.

22.    Plaintiffs are informed and believe and on such basis allege that at all times relevant to this action, each of the individuals who seized and destroyed their property were the agents, servants and /or employees of the defendant CITY, and were acting at all times within the scope of their agency and employment and with the knowledge and consent of their principal and employer, the City of Los Angeles.

23.    Each plaintiff has timely filed a claim for damages with the defendant CITY, pursuant to Government Code section 910, et seq.

24.    Plaintiffs are informed and believe that the acts complained of herein were done in the furtherance of the customs, policies and practices of authorized policymakers of the defendant CITY and were joined in and/or implemented by the CITY's agents and employees who seized and destroyed Plaintiffs' property.  Each of these individual LAPD officers and Public Works employees were acting as the agent and employee in concert with each other.  Each of the defendant CITY's agents and employees caused the violation of Plaintiffs' constitutional and statutory rights and the resulting injuries by, among other things, participating personally in the unlawful conduct; by authorizing, acquiescing or setting in motion the policies, plans and actions

that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct, by demonstrating deliberate indifference to the need to maintain adequate training and supervision, and by failing to take remedial and disciplinary action. The CITY was on notice of the need for training in this instance based on the three past legal actions brought against the CITY. Moreover, the confiscation of some of the Plaintiffs' property was reported in the Los Angeles Times when Senior Lead Officer Deon Joseph brought Sandy Banks of the Times on a tour of Skid Row in which he violated the Fourth Amendment rights of the Plaintiff class with impunity by invading their tents without a warrant and without exigent circumstances for the sole purpose of making a point to the reporter.

## CLASS ALLEGATIONS

25. The individual plaintiffs named above filed claims against the CITY both as individuals and as representatives of the class. They bring this action pursuant to F.R.Civ.P. 23(b)(2) to certify an injunctive relief class. The class is defined as:

> all individuals who are homeless and reside in the Skid Row area whose personal belongings have or will be taken and immediately destroyed by the agents and employees of the defendant CITY without any notice and opportunity to retrieve the property, which was not abandoned by the plaintiff class members.

25. The class consists of approximately 3,000 individuals, which is the approximately number of individuals who reside in the Skid Row but who have no daytime shelter or other location at which to store their property while they attend to the basics of life, including showering, eating, and obtaining services at various government offices and private facilities. The members of the class are so numerous as to make joinder impracticable.

26. There are common questions of law and fact that predominate over any questions affecting individual class members. Among the common questions of law

and fact are the following:

a.      Whether defendant CITY's policies, practices and conduct of seizing and destroying the personal property of individuals who are homeless, without providing any prior notice or an opportunity to retrieve vital personal possessions before they are destroyed violated and continue to violate the class members' state and federal constitutional rights against unreasonable seizure;

b.      Whether these same policies, practices and conduct violated and continue to violate the class members' state and federal constitutional rights to due process;

c.      Whether these same policies, practices and conduct violated and continue to violate the class members' rights pursuant to California Civil Code §§ 52 and 52.1, Civil Code § 2080; and,

d.      Whether injunctive relief should issue to enjoin the policy, practice and conduct of the CITY's agents and employees in seizing and immediately destroying the property of homeless individuals on Skid Row when the property is not abandoned.

27.      The claims of the class representatives are typical of those of the class members with respect to the constitutionality and legality of the CITY's policies, practices and conduct at issue here.  The prosecution of individual actions against the CITY by individual class members would create a risk of inconsistent and varying adjudications, which would result in variable standards of conduct for defendant.

28.      The class representatives will fairly and adequately protect the interests of the class  members and are unaware of any conflict among or between the class members that would preclude their fair and adequate representation. Class counsel is an experienced litigator who has brought several class actions on behalf of homeless individuals in the City of Los Angeles, including *Fitzgerald v. City of Los Angeles,* 2003 U.S. Dist. LEXIS 27382 (C.D. CA 2003) (approving attorney fees separate from

common fund award to damages class) and *Noe v. City of Los Angeles*, discussed at paragraph 9, above.

## FIRST CAUSE OF ACTION

### Right to Be Secure From Unreasonable Seizures

### 42 U.S.C. §1983 - Fourth Amendment; Art. 1, §13, California Constitution

29.     Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 28 as though fully set forth hereat.

30.     Defendant CITY violated Plaintiffs' Fourth Amendment rights to be free from unreasonable seizure of their property by confiscating and then destroying Plaintiffs' property without a warrant and often under threat of arrest if Plaintiffs attempted to retrieve the property before it was crushed by the skip loader.

31.     Defendant's unlawful actions, through the conduct of its employees from the LAPD and the Dept. of Public Works was done with the specific intent to deprive Plaintiffs of their constitutional rights to be secure in their property.

32.     Plaintiffs are informed and believe that the acts of the CITY's employees and agents were intentional in failing to protect and preserve their property and that, at minimum, the CITY was deliberately indifferent to the likely consequence that the property would be seized and destroyed unlawfully, based on the past circumstances of similar constitutional and statutory  violations of the law.

33.     As a direct and proximate consequence of the acts of Defendant's agents and employees, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property and other injury to their person.

## SECOND CAUSE OF ACTION

### Right to Due Process of Law

### 42 U.S. C. §1983, Fifth and Fourteenth Amendments;

### Art. I, §7 Calif. Constitution

34.     Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 28 as though fully set forth hereat.

35.     Defendant CITY owed Plaintiffs a duty under the due process clause of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, sec. 7 of the California Constitution, and the statutory law of the State of California, to protect the personal property of Plaintiffs that was known not to be abandoned.

36.     Defendant provided Plaintiffs with no notice that their property was at risk of being seized and/or destroyed.  Defendant did not preserve the property and provide any means of reclaiming it in a timely manner, even though Defendant has been put on notice by the Los Angeles Superior Court and the United States District Court for the Central District of California that such notice and preservation of property was required.  Even when Defendant was specifically put on notice that the property was not abandoned and given an opportunity to cease the seizure and destruction of the personal items of Plaintiffs, Defendant denied Plaintiffs that due process under threat of arrest.

37.     Plaintiffs are informed and believe that the acts of the CITY's employees and agents were intentional in failing to protect and preserve their property and that, at minimum, the CITY was deliberately indifferent to the likelihood that the property would be seized and destroyed without due process based on the past occurrences of these same constitutional and statutory violations of the law.

38.     As a direct and proximate consequence of the acts of Defendant's agents and employees, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property and other injury

to their person.

## THIRD CAUSE OF ACTION

### Violation of Civil Rights: Interference By Threat, Intimidation or Coercion
### California Civil Code § 52.1

39.     Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 28 as though fully set forth hereat.

40.     Defendant's agents and employees have used threats of arrest and intimidation to interfere with Plaintiffs' rights to maintain their personal possessions in the exercise of Plaintiffs' rights secured by the Constitution of the United States, the Constitution of the State of California, and the statutory laws of the State of California.

41.     Plaintiffs are entitled to an injunction pursuant to California Civil Code §52.1.  Plaintiffs are also entitled to damages pursuant to Civil Code §§ 52 and 52.1. Plaintiffs have filed tort claims with the defendant CITY on behalf of themselves and all similarly situated persons.  Plaintiffs will amend this action to include damages under this provision once they have exhausted their administrative remedies.

## FOURTH CAUSE OF ACTION
### California Civil Code §2080, *et seq.*

42.     Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 28 as though fully set forth hereat.

43.     Defendant's policies, practices and conduct challenged herein violated California Civil Code § 2080 *et seq.*, in that Defendant's agents and employees failed to protect and preserve the personal property of Plaintiffs and members of the plaintiff class when the property was on the public sidewalk and streets; failed to provide notice that the property had been taken; and failed to provide an opportunity for the owners of the property to reclaim it within a reasonable time.  California Code of Civil Procedure § 2080 *et seq.* imposes a mandatory duty to maintain property that is not

abandoned.

## FIFTH CAUSE OF ACTION
### Conversion

44.     Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 28 as though fully set forth hereat.

45.     Plaintiffs were in possession of their personal property at the time that Defendant's agents and employees ordered that the property be seized and immediately destroyed without notice.  Defendant's agents and employees unlawfully prohibited Plaintiffs from securing their personal property and the personal property of others left in their care.  Plaintiffs were threatened with forcible arrest if they attempted to retrieve their belongings.

46.     Defendant and its agents and employees had a duty owed to Plaintiffs to protect their personal property under Los Angeles Municipal Code §52.55 and California Civil Code §§ 2080.2, 2080.4 and 2080.6.  Plaintiffs' property was not abandoned at the time that Defendant seized it and immediately destroyed in and Defendant's agents and employees knew that the property was not abandoned. Defendant breached its duty to protect Plaintiffs' personal property when its agents and employees wrongly exerted dominion over the property and denied Plaintiffs' their constitutional and statutory rights.

47.     Defendant had no legitimate governmental interest that gave its agents and employees the legal right or justification for confiscating Plaintiffs' property and then immediately demolishing it without prior notice to Plaintiffs and without a procedure to permit Plaintiffs to recover their property, and without fair compensation to Plaintiffs.

48.     As a direct and proximate consequence of the acts of Defendant's agents and employees, Plaintiffs have suffered and continue to suffer loss of their personal

property and are entitled to compensatory damages for their property and other injury to their person.

## INJUNCTIVE RELIEF

49.      Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 28 as though fully set forth hereat.

50.      A real and immediate difference exists between Plaintiffs and Defendant regarding Plaintiffs' rights and Defendant's duty owed to Plaintiffs to protect Plaintiffs' personal property present on public sidewalks and streets in Skid Row.  Defendant's policies and actions have resulted and will result in irreparable injury to Plaintiffs. There is no plain, adequate or complete remedy at law to address the wrongs described herein.  Defendant has made it clear that it intends to continue these practices of confiscating and immediately destroying the property of homeless individuals from the public streets and sidewalks without a warrant and without notice.  Unless restrained by this Court, Defendant will continue to implement this policy and practice of confiscating and summarily destroying the personal property of Plaintiffs and members of the plaintiff class.

51.      Defendant's acts alleged above violate established constitutional rights of Plaintiffs and Defendant could not reasonably have thought that the conduct of its agents and employees in seizing and destroying Plaintiffs' property was lawful.

52.      An actual controversy exists between Plaintiffs and Defendant in that Defendant's agents and employees have engaged in the unlawful and unconstitutional acts alleged herein and intend to continue to do so.  Plaintiffs claim that these acts are contrary to law and seek a declaration of their rights with regard to this controversy.

53.      As a direct and proximate consequence of the acts of Defendant's agents and employees, Plaintiffs have suffered and will continue to suffer damages through

injury to their person and the loss of their personal property, including all of their clothing, bedding, medication, personal papers and other personal possessions, stripping them of the essential Plaintiffs' need for their well-being and personal dignity.

**WHEREFORE**, Plaintiffs pray as follows:

1.      For a temporary restraining order, preliminary injunction and permanent injunction, enjoining and restraining defendants from engaging in the policies, practices and conduct complained of herein;

2.      For a declaratory judgment that Defendant's policies, practices and conduct as alleged herein violates Plaintiffs' rights under the United States Constitution, the California Constitution and the laws of California;

3.      For an order certifying the injunctive relief class pursuant to F.R.Civ.P. 23(b)(2);

4.      For damages in an amount to be determined according to proof but in no event less than $4,000 per incident pursuant to Cal. Civ. Code §§ 52, 52.1 and Cal. Government Code § 815.6.

5.      For costs of suit and attorney fees as provided by law;

6.      For such other relief as the Court deems just and proper.

Dated: April 5, 2011                    Respectfully submitted,

                                        LAW OFFICE OF CAROL A. SOBEL

                                        _____/S/_____
                                        By: CAROL A. SOBEL
                                        Attorneys for Plaintiffs

EXHIBIT A

ORIGINAL

FILED
CLERK, U.S. DISTRICT COURT

NOV - 6 2001

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1   Diana Greene Gordon (State Bar No.79389)
    LAW OFFICE OF DIANA GREENE GORDON
2   429 Santa Monica Boulevard, Suite 550
    Santa Monica, California  90401-3439
3   T. (310) 260-2636  F. (310) 260-2977

4   Mark D. Rosenbaum (State Bar No.59940)
    ACLU FOUNDATION OF SOUTHERN CALIFORNIA
5   1616 Beverly Boulevard
    Los Angeles, California 90026-9938
6   T. (213) 977-9500, Ext.224  F. (213) 250-3919

7   Carol A. Sobel (State Bar No.84483)
    Yvonne T. Simon (State Bar No. 176239)
8   LAW OFFICE OF CAROL A. SOBEL
    429 Santa Monica Boulevard, Suite 550
9   Santa Monica, California 90401-3439
    T. (310) 393-3055   F. (310) 393-3605
10
    Douglas E. Mirell (State Bar No.94169)
11  Negin Mirmirani (State Bar No. 211586)
    1000 Wilshire Boulevard, Suite 1800
12  Los Angeles, California 90017
    T. (213) 688-3400  F. (213) 688-3460
13
    Dilan A. Esper (State Bar No.178293)
14  9200 Sunset Boulevard, Suite 825
    Los Angeles, California 90069
15  T. (310) 275-5351  F. (310) 273-8706

16  Attorney for Plaintiffs

17

18              UNITED STATES DISTRICT COURT

19        FOR THE CENTRAL DISTRICT OF CALIFORNIA

20  MICHAEL JUSTIN, et al.,                )   CASE NO. CV 00-12352 LGB (AIJx)
                                           )
21                    Plaintiffs,          )   NOTICE OF SETTLEMENT AND
                                           )   STIPULATED REQUEST FOR ENTRY
22  v.                                     )   OF A PERMANENT INJUNCTION
                                           )   AND JUDGMENT ORDER THEREON,
23  CITY OF LOS ANGELES, et al.,           )   WITH A RESERVATION OF
                                           )   JURISDICTION
24          Defendants.                    )

25

26  ✓ Docketed
    ✓ Copies / NTC Sent
27  ✓ JS - 5 / JS - 6
    ___ JS - 2 / JS - 3
28  ___ CLSD

Priority    ✗
Send
Enter       ✗
Closed
JS-5/JS-6   ✗
JS-2/JS-3   ___
Scan Only   ___

ENTERED
CLERK, U. S. DISTRIC. COURT

NOV - 7 2001

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

LODGED

(44)

1    The parties hereby file this joint notice of settlement and order of

2   permanent injunction thereon in the above-captioned action, with a reservation of

3   the Court's jurisdiction to enforce the terms of the settlement. The executed

4   Settlement Agreement and Release entered into by the parties is attached as

5   Exhibit 1 and incorporated as though fully set forth herein.

6    This action was filed on November 20, 2000. The Court entered a

7   temporary restraining order on December 5, 2000, which, by stipulation of the

8   parties, has remained in effect since that date. On June 11, 2001, the Court

9   granted plaintiffs' motion for certification of this matter as a class action pursuant

10   to Federal Rules of Civil Procedure 23(b)(2). By stipulation of the parties, the

11   Court now enters a permanent injunction in accord with the terms of the

12   Settlement Agreement entered into by the parties.

13    Defendants do not admit any liability, as it is defendants' understanding and

14   belief that defendants' current policies are consistent with the terms of this

15   injunction and with the First and Fourteenth Amendments to the United States

16   Constitution. Nevertheless, defendants are hereby enjoined as follows with

17   respect to all members of the Class, when such Class members are in the Skid Row

18   area as described in the Complaint filed in this action:

19    IT IS ORDERED AND ADJUDGED that tefendants, their agents,

20   employees and successors, are hereby permanently enjoined from doing the

21   following:

22        1. Officers will not conduct detentions or "Terry" stops without

23   reasonable suspicion. However, officers may continue to engage in consensual

24   encounters with persons in the Skid Row area, including members of the Class;

25        2. Officers will not demand identification upon threat of arrest or

26   arrest individuals solely due to their failure to produce identification in

27   circumstances where there is no reasonable suspicion to stop or probable cause to

28   arrest;

1

1           3. Officers will not conduct searches without probable cause to do

2   so, except by consent or for officer safety reasons as permitted by law;

3           4. Officers will not order individuals to move from their position on

4   the sidewalk on the basis of loitering unless they are obstructing or unreasonably

5   interfering with the free passage of pedestrians on the sidewalk or "loitering" for a

6   legally independent unlawful purpose as specified in California Penal Code

7   section 647;

8           5. Defendants will not confiscate personal property that does not

9   appear abandoned and destroy it without notice. However, defendants may

10  continue to clean streets and sidewalks, remove trash and debris from them, and

11  immediately dispose of such trash and debris. Where applicable, defendants will

12  give notice in compliance with the temporary restraining order issued in *Bennion*

13  *v. City of Los Angeles* (C637718). Any personal property that does not appear

14  intentionally abandoned collected by defendants will be retained for 90 days as

15  provided in California Civil Code section 2080.2;

16          6. Officers will not cite individuals for violation of either Penal Code

17  section 647(e) (loitering) or that portion of Los Angeles Municipal Code section

18  41.18 which makes it unlawful to "annoy or molest" a pedestrian on the sidewalk.

19  However, officers may cite for obstructing or unreasonably interfering with the

20  free passage of pedestrians on the sidewalk;

21          Notwithstanding these injunctions, defendants will continue to be permitted

22  to engage in lawful conduct necessary to protect the public safety and welfare in

23  times of national emergency, natural disaster, or immediate threat to public health.

24          IT IS FURTHER ORDERED that this injunction will remain in force for 48

25  months from the date on which it is signed by the court. However, plaintiffs may

26  move for an extension of the injunction upon a showing of good cause presented

27  by way of a motion filed within the last 90 days prior to expiration. The duration

28  of any extension granted by the court will be subject to the court's discretion, but

2

1  in any case will not exceed 48 months.

2       Upon entry of the permanent injunction, the court further orders that this

3  shall constitute the final judgment in this action, with an express reservation of the

4  court's jurisdiction to enforce the terms of the settlement agreement and the

5  permanent injunction entered in this action.

6

7  Dated: _November 5, 2001_                         _____

8                                                    UNITED STATES DISTRICT JUDGE

9

10

11  Lodged by:

12  ACLU FOUNDATION OF SOUTHERN
        CALIFORNIA
13  LAW OFFICE OF DIANA GREENE GORDON
    LAW OFFICE OF CAROL A. SOBEL
14  DOUGLAS E. MIRELL

15  _____
    By: CAROL A. SOBEL
16  Attorneys for Plaintiffs

17  ROCKARD DELGADILLO, City Attorney
    DEBRA GONZALES, Asst. City Attorney
18  JAMES AXTELL, Deputy City Attorney

19  _____
20  By: JAMES AXTELL
    Attorneys for Defendants

21

22

23

24

25

26

27

28
                              3

1  in any case will not exceed 48 months.

2  Upon entry of the permanent injunction, the court further orders that this

3  shall constitute the final judgment in this action, with an express reservation of the

4  court's jurisdiction to enforce the terms of the settlement agreement and the

5  permanent injunction entered in this action.

6

7  Dated: _____          UNITED STATES DISTRICT JUDGE

8

9

10

11  Lodged by:

12  ACLU FOUNDATION OF SOUTHERN
         CALIFORNIA
13  LAW OFFICE OF DIANA GREENE GORDON
     LAW OFFICE OF CAROL A. SOBEL
14  DOUGLAS E. MIRELL

15  By: CAROL A. SOBEL
     Attorneys for Plaintiffs
16

17  ROCKARD DELGADILLO, City Attorney
     DEBRA GONZALES, Asst. City Attorney
18  JAMES AXTELL, Deputy City Attorney

19

20  By: JAMES AXTELL
     Attorneys for Defendants
21

22

23

24

25

26

27

28

NO 5111

10% post consumer waste

Grid A - Line up $7/16$" tabs using long line as guide for 20 tabs. Line up $7/16$" tabs using short line as a guide for 10 tabs
Grid B - Line up $11/16$" tabs using long line as guide for 5 tabs. Line up $11/16$" tabs using short line as a guide for 8 tabs.

Line up 1" tabs using long line as guide          Line up bottom of 1/2  tabs using every line as a guide

A

B

P21

### SETTLEMENT AGREEMENT
(Justin v. City of Los Angeles CV00-12352)

This Settlement Agreement and Release ("Agreement") is made by and between (1) plaintiffs Michael Justin, Troy B., Todd P., Jo Jo Brown, and Bruce Snyder, and (2) defendants City of Los Angeles, Chief Bernard C. Parks, and Captain Stuart A. Maislin.

### BACKGROUND:

A. On November 20, 2000, plaintiffs filed their complaint in case number CV00-12352 alleging that defendants were acting in violation of the First and Fourth Amendment rights of "homeless" persons in the "Skid Row" area of Los Angeles by engaging in the following practices: stopping homeless persons on public sidewalks and demanding identification on threat of arrest; arresting homeless persons for failure or refusal to produce identification; searching the possessions of homeless persons without probable cause; threatening citation or arrest for "loitering"; writing improper citations for jaywalking or blocking the sidewalk; and seizing personal property and destroying it without notice. Skid Row was defined as that area between Third and Seventh Streets and between Main and Alameda in Downtown Los Angeles. Plaintiffs sought injunctive relief only.

B. On December 5, 2000, the Honorable Lourdes G. Baird, Federal District Court Judge, issued a Temporary Retraining Order enjoining defendants from engaging in many of the activities alleged by plaintiffs. The TRO has been in effect since that time.

C. On June 11, 2001, Judge Baird issued an order certifying the case as a Class Action. Members of the Class include all homeless persons present in the Skid Row area of Downtown Los Angeles who are subject to any unlawful policy of defendants as alleged in plaintiffs' complaint.

D. Defendants deny the existence of any of the unlawful policies alleged in plaintiffs' complaint and assert that their current policies are consistent with both the First and Fourth Amendment rights of homeless persons and of all other people in Los Angeles. Nothing in this settlement agreement constitutes an admission of liability by defendants.

E. Nevertheless, at this time the parties desire to resolve this matter without further litigation and therefore intend with this Settlement Agreement to resolve all issues pertaining to case number CV00-12352 upon the terms and conditions set forth in this Agreement.

**THEREFORE,** in consideration for the recitals, promises, representations, covenants, terms, conditions, and releases contained in this Agreement, the parties agree as follows:

1

5

**1. Injunctive Relief.** A stipulated permanent injunction will issue containing the following substantive language:

"Defendants do not admit any liability, as it is defendants' understanding and belief that defendants' current policies are consistent with the terms of this injunction and with the First and Fourth Amendments to the United States Constitution. Nevertheless, defendants are hereby enjoined as follows with respect to all members of the Class, when such Class members are in the Skid Row area as described in plaintiffs' complaint :

1. Officers will not conduct detentions or "Terry" stops without reasonable suspicion. However, officers may continue to engage in consensual encounters with citizens, including members of the Class.

2. Officers will not demand identification upon threat of arrest or arrest individuals solely due to their failure to produce identification in circumstances where there is no reasonable suspicion to stop or probable cause to arrest.

3. Officers will not conduct searches without probable cause to do so, except by consent or for officer safety reasons as permitted by law.

4. Officers will not order individuals to move from their position on the sidewalk on the basis of loitering unless they are obstructing or unreasonably interfering with the free passage of pedestrians on the sidewalk or "loitering" for a legally independent unlawful purpose as specified in California Penal Code section 647.

5. Defendants will not confiscate personal property that does not appear abandoned and destroy it without notice. However, defendants may continue to clean streets and sidewalks, remove trash and debris from them, and immediately dispose of such trash and debris. Where applicable, defendants will give notice in compliance with the temporary restraining order issued in *Bennion v. City of Los Angeles* (C637718). Any personal property that does not appear intentionally abandoned collected by defendants will be retained for 90 days as provided in California Civil Code section 2080.2.

6. Officers will not cite individuals for violation of either Penal Code section 647(e) (loitering) or that portion of Los Angeles Municipal Code section 41.18 which makes it unlawful to "annoy or molest" a pedestrian on any sidewalk. However, officers may cite for obstructing or unreasonably interfering with the free passage of pedestrians on the sidewalk.

Notwithstanding these injunctions, defendants will continue to be permitted to engage in lawful conduct necessary to protect the public safety and welfare in times of national emergency, natural disaster, or immediate threat to public health."

**2. Duration of Injunction.** The injunction will not be of indefinite duration. Rather, the injunction will include the following language pertaining to expiration:

2

6

"This injunction will remain in force for 48 months from the date on which it is signed by the court. However, plaintiffs may move for an extension of the injunction upon a showing of good cause presented by way of a motion filed within the last 90 days prior to expiration. The duration of any extension granted by the court will be subject to the court's discretion, but in any case will not exceed 48 months."

**3. Attorneys fees and costs.** Within 30 days after this agreement is executed by all parties, defendant City of Los Angeles will pay plaintiffs attorneys fees and costs in the amount of $206,000. Plaintiffs accept this amount as full payment for any and all monetary amounts owed in connection with case number CV00-12352, and, on behalf of themselves and all other members of the Class, hereby release all defendants, as well as all other employees and entities of the City of Los Angeles, from any further obligations to pay any further amounts.

**4. Release of defendants.** Except as provided for in this Agreement, plaintiffs, on behalf of themselves and all other members of the Class, hereby release defendants, as well as all other employees and entities of the City of Los Angeles from any and all obligations and liabilities in connection with the injunctive relief claims in case number CV00-12352 and the allegations made therein.

**5. Release of Plaintiffs.** Except as provided for in this Agreement, defendants, on behalf of themselves and all other employees and entities of the City of Los Angeles, hereby release plaintiffs, as well as all other persons and entities from any and all obligations and liabilities in connection with the injunctive relief claims in case number CV00-12352 and the allegations made therein.

**6. Exhibits.** A true and correct copy of the temporary restraining order issued in *Bennion v. City of Los Angeles* is attached as Exhibit A to this Agreement.

**7. Counterparts and Facsimile.** This Agreement may be executed in counterparts and by facsimile. Each executed counterpart will be deemed an original, and all executed counterparts, when taken together, shall constitute one and the same document.

**8. Authorization.** Each undersigned warrants that it has the authority to execute this agreement on behalf of its respective parties and that it has read and understood and agrees to all of the terms and conditions of this Agreement.

**MICHAEL JUSTIN**

Dated: 10 / 15 , 2001

By: _Michael Justin_

3

1

TROY B.

Dated: _____, 2001                    _____

                                           By: _____

TODD P.

Dated: _____, 2001                    _____

                                           By: _____

JO JO BROWN

Dated: _____, 2001                    _____

                                           By: _____

BRUCE SNYDER

Dated: 10/11, 2001                         _____

                                           By: _Bruce Snyder_____

CITY OF LOS ANGELES
CHIEF BERNARD C. PARKS
CAPTAIN STUART MAISLIN

Dated: 11/01, 2001,                        JAMES AXTELL, DEPUTY CITY ATTORNEY

                                           By: _____

143145
September 28, 2001

4

8

for post consumer waste

Grid A - Line up 7/16" tabs using long line as guide for 20 tabs. Line up 7/8" tabs using short line as a guide for 10 tabs.
Grid B - Line up 11/8" tabs using long line as guide for 5 tabs. Line up 11/8" tabs using short line as a guide for 8 tabs.

Line up 1" tabs using long line as guide          Line up bottom of 1/2" tabs using every line as a guide.

P26

ACLU FOUNDATION OF SOUTHERN CALIFORNIA
PAUL L. HOFFMAN
MARK D. ROSENBAUM
CATHERINE LESLIE
633 South Shatto Place
Los Angeles, California  90005
213/487-1720

O'DONNELL & GORDON
JEFFREY S. GORDON, P.C.
601 West Fifth Street, Suite 1200
Los Angeles, California  90017

Attorneys for Plaintiffs

ORIGINAL FILED

FEB 2 5 1987

COUNTY CLERK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| ADAM YOUNG BENNION, JR., et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF LOS ANGELES, et al., <br><br> Defendants. | No. C 637718 <br><br> TEMPORARY RESTRAINING ORDER |

The Court having considered the declarations, pleadings and arguments of counsel, and good cause having been shown, issues the following order:

## ORDER TO SHOW CAUSE

Defendants are hereby ordered to appear on March 12, 1987, in Department 86 at 9:00 a.m. to show cause why a preliminary injunction should not be issued, in the form of the Temporary Restraining Order below.

It is further ordered that the complaint, points and authorities, declaration and this Order to Show Cause and Temporary Restraining Order be served on defendants twelve days prior to the hearing.  Depositions can be taken and requests for

1.

1  documents can be made upon seven days notice.  Opposition papers
2  are due seven days before the hearing and all reply papers are
3  due three days before the hearing, by hand delivery.

## TEMPORARY RESTRAINING ORDER

### I.  BOUNDARIES

6  The area affected by this order is the Skid Row area of the
7  City of Los Angeles -- that area bordered on the north by Third
8  Street, on the South by Eighth Street, on the east by Central
9  Avenue, and on the west by Spring Street.  The order applied to
10  both sides of each of the named streets that make up its
11  boundaries.

### II.  PERSONS RESTRAINED

13  The persons who are restrained under this order are all
14  employees of the City of Los Angeles (and their agents and
15  representatives), including but not limited to, the Los Angeles
16  Police Department and the Department of Public Works (hereafter
17  collectively and individually referred to as City employees):

### III.  NOTICE REQUIREMENTS

19  In the event a City employee determines that specific
20  personal property is placed, stored or kept in such a manner
21  that it is in violation of applicable ordinances, statutes or
22  other legislation, the City employee must post a prominent
23  notice in some conspicuous place on the cite. ~~from which the~~
24  ~~property is to be seized.~~  The notice shall include the specific
25  citation to the law allegedly violated and state that the
26  property will be subject to ~~seizure~~ disposal if the violation is not
27  corrected within twelve hours from the time the notice is

1    posted.   The notices can only be posted between the hours of

2    12:00 a.m. and 12:00 p.m.

3    Dated:    February 25, 1987

4

5                                              /s/

6                                    Honorable Ricardo A. Torres
                                     Judge of the Superior Court

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

STATE OF CALIFORNIA            )
                               ) ss.
COUNTY OF LOS ANGELES          )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 429 Santa Monica Boulevard, Suite 550, Santa Monica, CA 90401

On November 1, 2001, I served the foregoing document described as: NOTICE OF SETTLEMENT AND REQUEST FOR ENTRY OF A PERMANENT INJUNCTION in this action by placing a true copy thereof in a sealed envelope, with postage fully affixed, and addressed as follows:

James Axtell
Deputy City Attorney
200 N. Main Street
1700 City Hall East
Los Angeles, CA. 90012

__X__   **BY U.S. MAIL** I caused such envelope to be deposited in the mail, with postage thereon fully prepaid, at Santa Monica, California. [I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one (1) day after the date of deposit for mailing in the affidavit.]

__   **BY PERSONAL SERVICE** I personally delivered such envelope to the office of the person shown above.

__   **BY OVERNIGHT DELIVERY.** I caused such envelope to be deposited in a box or other facility regularly maintained by an overnight delivery express service carrier, or delivered this envelope to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or package designated by the express service carrier with delivery fees prepaid or provided for, addressed to the person on whom it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service.

__   **BY FACSIMILE SERVICE.** Transmitted to the number shown above.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that this declaration was executed on November 1, 2001, at Santa Monica, California.

*Carol A. Sobel*
CAROL A. SOBEL

EXHIBIT B

LODGED          ORIGINAL

CAROL A. SOBEL, State Bar No. 84483
LAW OFFICE OF CAROL A. SOBEL
2 | 429 Santa Monica Boulevard, Suite 550
Santa Monica, California 90401
3 | T. (310) 393-3055; F. (310) 393-3605
E. carolsobel@aol.com
4
REBECCA F. THORNTON, State Bar No. 23
5 | LAW OFFICE OF REBECCA F. THORNTON
429 Santa Monica Boulevard, Suite 550
6 | Santa Monica, California 90401
T. (310) 393-3055 F. (310) 393-3605
7 | E. rebecca@humanrightsesq.com

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

SEP 26 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                      DEPUTY

Priority
Send

8 | Attorney for Plaintiffs

9

UNITED STATES DISTRICT COURT

10

FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12

RICHARD NOE, on behalf of himself    | CASE NO. CV 05-08374 AG (SSx)
13 | and the class of similarly situated persons,

14 |                 Plaintiffs,       | [PROPOSED] ORDER RE CERTI-
                                      | FICATION OF A DAMAGES
15 | vs.                              | CLASS, APPOINTMENT OF CLASS
                                      | COUNSEL AND A CLASS
16 |                                   | REPRESENTATIVE, PRELIMI-
CITY OF LOS ANGELES, et al.,         | NARY APPROVAL OF THE
17 |                                   | SETTLEMENT AND SCHEDULE
                 Defendants.         | FOR A FAIRNESS HEARING
18

Date: September 25, 2006
19 |       DOCKETED ON CM             | Time: 10:00 a.m.
                                      | Ctrm: 11 (Hon. Andrew Guilford)
20

21 |       SFP 26 2006

22 | BY          178

23 |      On August 29, 2006, plaintiff filed a Notice of Settlement and a motion for

24 | the approval of a preliminary settlement of this matter on behalf of the putative

25 | class. The Notice of Settlement advised the Court that an accord had been

26 | reached, agreeing to pay the sum of $50,000 to resolve the case, inclusive of all

27 | fees and costs to class counsel. In addition, plaintiffs filed a proposed Notice o

28 | proposed Class Settlement and a Claim Form to be distributed to the potential

1   Settlement Class members.

2       The Court has considered the request to approve the Settlement of this
3   action. The Court finds that there is good cause for preliminary approval. The
4   proposed settlement appears to be within the range of reasonableness and
5   accordingly shall be submitted to the class members for their consideration and for
6   a hearing under Fed. R. Civ. P. 23(e). The terms of the Settlement, as set forth in
7   the Notice of Settlement, are incorporated as though fully set forth in this Order.

8       1.   Class Certification:

9       The Court finds that certification of the proposed damages Settlement Class
10  pursuant to F.R.Civ.P. 23(b)(3) is proper. The damages class would readily satisfy
11  all of the requirements of F.R.Civ.P. 23(a). Accordingly, the Court certifies the
12  following class for settlement purposes:

13      All persons who were homeless at or near Venice Beach in the City of
14      Los Angeles in the early morning hours of September 2, 2004 and
15      whose property was seized at Venice Beach, without warrant, and
16      destroyed by the Los Angeles Police Department and other City of
17      Los Angeles employees. The term 'homeless" as defined under
18      federal law, means someone who is without a fixed, regular and
19      adequate night-time residence, or a person who was residing in a
20      shelter, welfare hotel, transitional program or place not ordinarily
21      used for sleeping accommodations, such as the streets, automobiles,
22      abandoned buildings, etc. 42 U.S. C. 11302 (Stewart B. McKinney
23      Homeless Assistance Act)

24      The Court finds that settlement of the damages class in this instance is
25  sufficient to protect the interests of the plaintiffs.

26      2.   Class Counsel; Class Representative:

27      In accord with the requirements of FRCP 23(a)(4), the Court appoints Carol
28  A. Sobel as Settlement Class Counsel and Richard Noe as the class representative.

-2-

1  The Court finds that there is no evidence of any potential or actual conflict
2  between class counsel and the class representative, or between the class
3  representative and any other member of the class.

4         3.    Preliminary Approval of Statutory Fees and Costs

5         The Court has considered the statutory fees and costs to be paid to
6  Settlement Class Counsel. Under the Court's independent obligation to do so, the
7  Court has reviewed the time and costs records submitted by Plaintiffs' counsel, as
8  well as the Declaration of Carol A. Sobel filed in support of the fees and costs.
9  Following the analysis applied to a contested motion for statutory fees pursuant to
10 42 U.S.C. §1988, the Court finds that the number of hours sought and the billing
11 rates for Plaintiff's counsel are reasonable. The Court also finds that the costs of
12 litigation sought by Plaintiff's counsel are reasonable.

13        4     Hearing

14        The Court sets a hearing on the final approval of the Settlement in this
15 action for November 20____, 2006 at 10:00 a.m. in Courtroom 10D of the United
16 States District Court, located at 411 West Fourth Street, Santa Ana, California.

17        a.    Plaintiff's counsel is to give notice of the proposed Class Settlement
18 by distributing copies of the Notice to all previously identified putative class
19 members, and by distributing copies to all "shelters, welfare hotels and transition
20 programs" in Santa Monica, Venice, West Los Angeles, Hollywood and
21 downtown Los Angeles. Plaintiff's counsel shall file a report with the Court prior
22 to the hearing regarding the specifics of the Notice of the hearing given.

23        b.    Objections by class members who do not timely move to exclude
24 themselves from the class to the proposed class settlement should be considered if
25 filed in writing with the Clerk of the Court on or before November 6, 2006.

26        c.    Class members who do not move to exclude themselves from the
27 class may be heard in support of or in opposition to the settlement at the hearing,
28 provided that they file with the Clerk of the Court a written notice of the intention

-3-

1  to appear personally, indicating briefly the nature of their objection, if any.

2      d.     Counsel for the class and counsel for defendants should be prepared

3  at the hearing to respond to objections filed by such class members and to provide

4  other information, as appropriate, bearing on whether or not the settlement should

5  be approved.

6      5.     Exclusion from the Class Settlement

7      Class members may exclude themselves from the class by filing with the

8  Settlement Class Counsel within 30 days of the date of this Order, the form

9  appended to Attachment A or some other appropriate written indication that they

10 request exclusion from the class.

11     6.     Notice of Proposed Settlement and Hearing

12     By October 2, 2006 Class Counsel shall mail in the name of the Clerk of the

13 Court by first class mail, postage prepaid, to all class members who can be

14 identified through reasonable efforts, a notice in substantially the same form as

15 Exhibit D.  Class Counsel shall cause to be "published" a notice in substantially

16 the same form as Exhibit D by distributing as set forth above at paragraph 4a.

17     7.     List of Class Members

18     One week prior to the hearing date, Class Counsel will file with the clerk an

19 affidavit setting forth the individuals identified as class members and who have

20 not timely requested exclusion.
      8. The Final Pretrial Conference and Trial

21 dates are ordered vacate.

22 DATED: SEPT 25, 2006

                              UNITED STATES DISTRICT JUDGE

23
                              ANDREW J. GUILFORD
   Lodged by:

24
   LAW OFFICE OF CAROL A. SOBEL
25 LAW OFFICE OF REBECCA F. THORNTON

26

27 By: CAROL A. SOBEL
   Attorneys for Plaintiff NOE and class
28

                              -4-