O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#6

CIVIL MINUTES - GENERAL

| Case No. | CV 11-2874 PSG (AJWx) | Date | April 22, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | | |
|---|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**    (In Chambers) Order Granting Plaintiffs Application for a Temporary Restraining Order

Pending before the Court is Plaintiffs' *Ex Parte* Application for a Temporary Restraining Order. The Court held a hearing, where both parties were present, on April 22, 2011. After considering the papers submitted in support of the Application and in opposition to the Application, the Court GRANTS the Application and ISSUES a TEMPORARY RESTRAINING ORDER.

I.    Background

Plaintiffs Tony Lavan, Caterius Smith, William Vassie, Ernest Seymore, Lamoen Hall, Shamal Ballantine, Byron Reese, and Regina Wilson ("Plaintiffs") bring this putative civil-rights class action against the City of Los Angeles (the "City" or "Defendant") asserting claims under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, Article 1 § 7 and Article 1 § 13 of the California Constitution, California Civil Code § 52.1, California Civil Code § 2080, and common law conversion.

Plaintiffs, eight homeless individuals living in the City of Los Angeles's "Skid Row" area, allege that since February 2011, the City, through the Los Angeles Police Department ("LAPD") and other agencies, has confiscated and destroyed the personal possessions they temporarily left in public spaces in order to use the restroom, eat a meal, or, among other things, appear in court. *See Compl.* ¶¶ 1-6. Plaintiffs also allege that the City did this in furtherance of an ongoing practice and policy of ridding the area of its homeless population. *Compl.* ¶¶ 4, 6, 19, 24.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2874 PSG (AJWx) | Date | April 22, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles | | |

Plaintiffs expect that the City will "continue these practices of confiscating and immediately destroying the property of homeless individuals from the public streets and sidewalks without a warrant and without notice." *Compl.* ¶ 50. They seek a temporary restraining order to enjoin Defendant's purportedly unconstitutional practices. *See* Dkt. #6 (*Ex Parte* Application for a Temporary Restraining Order).

II.   Legal Standard

An application for a temporary restraining order must satisfy the same legal standard governing the issuance of a preliminary injunction. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001). Accordingly, a party seeking a temporary restraining order must establish each of the following elements: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) an advancement of the public interest. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008) (citation omitted). "The Ninth Circuit recently reaffirmed that within this framework a preliminary injunction also is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of the hardships tips sharply in the plaintiff's favor, thereby allowing district courts to preserve the status quo where difficult legal questions require more deliberate investigation," so long as the other remaining *Winter* factors are met. *Sencion v. Saxon Mortg. Services, LLC*, CV 10-3108 JF, 2011 WL 1364007, at *2 (N.D. Cal. April 11, 2011) (internal quotation omitted); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (allowing for a post-*Winter* "sliding scale" analysis in preliminary injunction inquiries where "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another").

III.   Discussion

Plaintiffs seek a temporary restraining order ("TRO") on the basis that facts like the following establish violations of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and violations of California law: On February 6, 2011, City employees confiscated and immediately destroyed property of five or six individuals including Seymore, when it was stored in shopping carts provided by the Catholic Workers' soup kitchen on the sidewalk at 5th Street and San Pedro, despite Seymore's complaint to the police that the property was not abandoned, *Seymore Decl.* ¶ 2; On February 24, LAPD officers took the personal property of 3 or 4 individuals at the corner of 6th Street and Gladys Street, near the Catholic

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2874 PSG (AJWx) | Date | April 22, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles | | |

Workers' soup kitchen, when the owners left the property momentarily to use the bathroom and get a drink of water, then the officers threatened to arrest the individuals if they attempted to take back their property, *Lamoen Hall Decl.* ¶¶ 3-4; *Reese Decl.* ¶¶ 2-3; *Smith Decl.* ¶ 6; On March 17, five individuals lost their property when they left it to take a shower at the Union Rescue Mission, go to court, or go to the bank, even though the LAPD knew the property was not abandoned; *Smith Decl.* ¶ 5, *Lavan Decl.* ¶ 5; *Vassie Decl.* ¶ 5; *Ballantine Decl.* ¶ 2; The personal property lost included, among others, identification cards, clothes, shelter, other personal papers and technological devices, *Seymore Decl.* ¶ 4; *Smith Decl.* ¶ 8; *Ballantine Decl.* ¶ 3; *Vassie Decl.* ¶ 6; *Hall Decl.* ¶¶ 5-6; *Reese Decl.* ¶¶ 4-5. The Court considers all the facts provided in the Complaint and sworn declarations against the *Winter* factors to determine whether a TRO should issue.

    A.    <u>Likelihood of Success on the Merits</u>

The gravamen of the Complaint is that the City is seizing and destroying Plaintiffs' property in violation of the Fourth Amendment's protections against unreasonable searches and seizures and the Fourteenth Amendment's due process protections. *See TRO App.* 4:27-5:7; 8:16-9:4. In so alleging, Plaintiffs submit a number of declarations confirming that the City has taken and destroyed personal property that was never abandoned. *See, e.g.*, *Lavan Decl.* ¶ 5 ("I then walked . . . to take a shower at the Union Rescue Mission. I was gone a total of approximately 20 to 25 minutes at the most. As I was walking back . . . I ran into [Plaintiff Smith] . . . [who] told me that the police were there and that the [property] was being taken and crushed. I ran back . . . [m]y [property] was already destroyed."). The City's alleged conduct is the same type of conduct that was enjoined in earlier lawsuits against the City for confiscation and destruction of homeless individual's property. *See Justin v. City of Los Angeles*, CV 00-12352 LGB AIJ, 2000 WL 1808426, at *13 (C.D. Cal. Dec. 5, 2000) (granting a temporary restraining order to stop, among other things, "confiscating the personal property of the homeless when it has not been abandoned and destroying it without notice").

In their application for a TRO, Plaintiffs correctly assert that they have a legitimate expectation of privacy in their property and that, as a result, the Fourth Amendment's protections against unreasonable searches and seizures applies. *See Lehr v. City of Sacramento*, 624 F. Supp. 2d 1218, 1235 (E.D. Cal. 2009) (citing *Justin*, 2000 WL 1808426, at *9); *Kincaid v. City of Fresno*, CV 06-1445 OWW SMS, 2006 WL 3542732, at *35-37 (E.D. Cal. 2006) (issuing a preliminary injunction after holding that "[t]he City's seizure of homeless people's personal property without probable cause and the immediate and permanent destruction of such property without a method to reclaim or to assert the owner's right, title, and interest to recover such

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2874 PSG (AJWx) | Date | April 22, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles | | |

personal property violates the Fourth Amendment to the United States Constitution and Article I § 13 of the California Constitution"). Just because the City may have found the property in a public area does not necessarily change that. *See Soldal v. Cook County*, 506 U.S. 56, 68, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992) ("an officer who happens to come across an individual's property in a public area could seize it only if Fourth Amendment standards are satisfied—for example, if the items are evidence of a crime or contraband."). The City, in opposing Plaintiffs' TRO request, does not even offer a cursory explanation or denial of the allegations in the Complaint and declarations. *See generally TRO Opp'n*. In light of the numerous—seven—declarations submitted, all of which allege substantially similar conduct on the part of the City in seizing and destroying personal property, as well as previous determinations that the same conduct against the *same party* violated the Fourth Amendment, the Court finds that Plaintiffs have established a likelihood of success of the merits sufficient to meet the first prong of *Winter*.

Moreover, under the Fourteenth Amendment to the United States Constitution, "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of laws." U.S. Const. amend. XIV. Article I, section 7 of the California Constitution similarly provides that a "person may not be deprived of life, liberty, or property without due process of law." Plaintiffs' personal possessions, perhaps representing everything they own, must be considered "property" for purposes of this due process analysis. *See Fuentes v. Shevin*, 407 U.S. 67, 84, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972); *see also Pottinger v. City of Miami*, 810 F. Supp. 1551, 1559 (S.D. Fla. 1992) (holding that confiscation and destruction of the property of the homeless violates both the Fourth and Fourteenth Amendments after noting that "a homeless person's personal property is generally all he owns; therefore, while it may look like 'junk' to some people, its value should not be discounted"). As such, before the City can seize and destroy Plaintiffs' property, it must provide notice and an "opportunity to be heard at a meaningful time and in a meaningful manner," *Matthews v. Eldridge*, 424 U.S. 319, 339-43, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), except in "extraordinary situations where some valid governmental interest is at stake that justifies the postponing of the hearing until after the event," *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993). Under *Matthews v. Eldridge*, a court is to consider three factors to determine whether the basic procedural due process requirements have been met:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2874 PSG (AJWx) | Date | April 22, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles | | |

the Government's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail.

*Matthews v. Eldridge*, 424 U.S. at 321.

Plaintiffs' sworn declarations that the City offered no notice of the seizure and destruction of their personal property, with absolutely no post-deprivation remedy, cuts sharply against a finding that due process has been accomplished here. The property taken includes likely essentials: government issued identification cards, necessary medical records, and medication. *See Ballantine Decl.* ¶ 3; *Reese Decl.* ¶ 5; *Seymour Decl.* ¶¶ 4-5. Moreover, the practice of on-the-spot destruction presents an enormous risk of erroneous deprivation, which could likely be mitigated by certain safeguards such as notice. *See Kincaid*, 2006 WL 3542732, at *38. Together, the declarations and state of the law with respect to the Fourteenth Amendment's due process requirements make it such that Plaintiffs have, again, sufficiently shown a likelihood of success on the merits under *Winter*. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982) ("the state may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement"); *Propert v. District of Columbia*, 948 F.2d 1327, 1335 (D.C. Cir. 1991) ("Although [a state] may have a strong interest in the prompt removal of supposed junk vehicles from the streets, its interest in the immediate destruction of such vehicles is far from apparent. On balance, the severity of the deprivation imposed on the vehicle's owner, combined with the potential vagaries of the enforcing officer's determinations, outweighs any government interest in the immediate destruction of a towed vehicle that has been identified as "junk" and compels the conclusion that post-towing process is required.").

Finally, the Court notes that Federal Rule of Civil Procedure 65(d) provides that an injunction or restraining order only binds: "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with [the parties]." Although this lawsuit is stylized as a class-action, the equivalent of class-wide relief may still be appropriate despite the fact that a class has not yet been certified. In *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486 (9th Cir. 1996), the Court held that "[w]hile injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification, an injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit-even if it is not a class action- *if such breadth is necessary to give prevailing parties the relief to which they are entitled.*" *Easyriders Freedom F.I.G.H.T.*, 92 F.3d at 1501-02 (internal citations omitted) (emphasis in original). As discussed, the allegations in the Complaint indicate that the City is

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#6

CIVIL MINUTES - GENERAL

| Case No. | CV 11-2874 PSG (AJWx) | Date | April 22, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles | | |

seizing and destroying property that has been temporarily left in public places by its owner, but not abandoned. Thus, it would likely be impossible for the City to determine whose property is being confiscated—i.e. whether it is one of the named Plaintiffs or another homeless person—and a TRO, as fashioned below, is necessary to "give prevailing parties the relief to which they are entitled." *Id.*

Thus, Plaintiffs have sufficiently established a likelihood of success on the merits for, at the least, their Fourth Amendment and Fourteenth Amendment claims against the City.

B. <u>Irreparable Injury</u>

The Ninth Circuit has held that "an alleged constitutional infringement will often alone constitute irreparable harm." *Associated Gen. Contractors of Cal., Inc. v. Coalition for Economic Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991); *see also Citicorp Servs., Inc. v. Gillespie*, 712 F. Supp. 749, 753 (N.D. Cal. 1989) ("In various cases, courts in the Ninth Circuit have presumed irreparable harm from an alleged violation of constitutional rights."). Plaintiffs have shown the likelihood of proving past constitutional violations and there is a potential for continuing violations, especially considering that the City has been ordered to stop similar practices in the past. *See Justin v. City of Los Angeles*, 2000 WL 1808426, at *13; *Compl.* ¶¶ 4-6, 20, 24 (each paragraph generally alleging a continuing policy to rid Skid Row of its homeless population).

C. <u>Balancing of Equities and the Public Interest</u>

A Court considering an application for a TRO must identify the harm that a TRO might cause a defendant and weigh it against the injury to a plaintiff. *Justin*, 2000 WL 1808426, at *11 (citing *Armstrong v. Marurak*, 94 F.3d 566, 568 (9th Cir. 1996)). Plaintiffs argue that the "balance of hardships tips sharply to Plaintiffs" because "Defendant destroys essentially the only property that the all-but defenseless Plaintiffs own at the time," including property such as "medications" and portable "dwellings." *TRO App.* 14:25-28. Although Defendant opposes the issuance of a TRO, it does not identify its interests in continuing the conduct described, and has not argued that it will suffer any hardship if a TRO issues. *See generally*, *Opp'n.*

Presumably, an injunction *might* hamper the City's efforts to keep its streets clean and safe, as argued by the City in past lawsuits. *See Justin*, 2000 WL 1808426, at *11. But as explained by Judge Baird in *Justin*:

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2874 PSG (AJWx) | Date | April 22, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles | | |

> Here, Defendants may be slowed in their efforts to keep the City, and especially the downtown area, clean and safe. [An] injunction may disturb their new initiative to revitalize and uplift communities, to improve the streets and sidewalks, and to diminish the crime rate . . . Plaintiffs, however, risk a greater harm if the injunction is not granted: the violation of their First, Fourth, and Fourteenth Amendment rights. The Court in *Pottinger* eloquently expressed the dangers homeless individuals face in analogous situations:
> "The court recognizes the City's interest in keeping its parks and public areas clear of unsightly and unsafe items. However, the City's interest in having clean parks is outweighed by the more immediate interest of the plaintiffs in not having their personal belongings destroyed. As this court previously found, the loss of such items such as clothes and medicine threatens the already precarious existence of homeless individuals by posing health and safety hazards."
> *Pottinger,* 810 F.Supp. at 1573. Similarly, Defendants' actions are likely to displace homeless individuals and threaten their ability to access charities for food, shelter, and assistance in Skid Row. As the *Pottinger* Court stated, Defendants' actions are likely to "threaten[ ] the already precarious existence of homeless individuals by posing health and safety hazards." Plaintiffs will suffer a great irreparable harm in comparison if the injunction is not granted here.

*Justin*, 2000 WL 1808426, at *11. Based on similar considerations, and after a careful analysis of the facts of this case, the Court finds that the balance of hardships tips in favor of the Plaintiffs. Moreover, the public interest is served by issuance of a TRO in that the City will still be able to *lawfully* seize and detain property, as opposed to unlawfully seizing and immediately destroying property.

    D.    <u>Bond</u>

Although a bond is typically required upon issuance of a TRO in federal court, courts in the Ninth Circuit have dispensed with the requirement where there is little or no harm to the party enjoined and where plaintiffs are unable to afford to post such a bond. *See, e.g., Jorgensen v. Cassiday,* 320 F.3d 906, 919 (9th Cir. 2003) ("We have recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, *if any."* ) (quotation marks omitted) (emphasis in original); *Barahona-Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir.1999) (waiving bond where vast majority of plaintiffs were "very poor"); *Kincaid*, 2006 WL 3542732, at *41 (dispensing with the bond requirement in a similar case where homeless plaintiffs were "destitute and [could not] afford to pay for a bond"); *Justin*, 2000 WL 1808426, at *2 (no bond

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2874 PSG (AJWx) | Date | April 22, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles | | |

requirement for homeless plaintiffs where "there was no proof of likelihood of harm to the party enjoined"). Like in *Kincaid* and *Justin*, the Court exercises its discretion to forego the bond requirement in light of the fact that Plaintiffs are homeless and that there is no real harm to the City in issuing this TRO.

    E.    <u>TRO Language</u>

Federal Rule of Civil Procedure 65(d) requires that "[e]very order granting and in junction and every restraining order *must*: (A) state the reason why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Thus, the Court must clearly state the specific terms of the TRO in order to "prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidr v. Lessard*, 414 U.S. 473, 476, 94 S. Ct. 713, 38 L. Ed. 2d 661 (1974). The Court finds that the following language satisfactorily complied with Rule 65's requirements:

Pending a hearing on a preliminary injunction, Defendant City, its agents and employees, are hereby enjoined from doing any of the following:

1. Seizing property in Skid Row absent an objectively reasonable belief that it is abandoned, presents an immediate threat to public health or safety, or is evidence of a crime, or contraband; and

2. Absent an immediate threat to public health or safety, destruction of said seized property without maintaining it in a secure location for a period of less than 90 days.

Defendant City, its agents and employees, is further directed to leave a notice in a prominent place for any property taken on the belief that it is abandoned, including advising where the property is being kept and when it may be claimed by the rightful owner.

A hearing on the Order to Show Cause why a preliminary and/or permanent injunction should not issue is set for **June 20, 2011 at 1:30 p.m.** Any additional briefing by the Defendant is to be filed not later than **May 16, 2011**. Any responsive briefing by the Plaintiffs is to be filed no later than **June 6, 2011**.

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**#6**

# CIVIL MINUTES - GENERAL

| Case No. | CV 11-2874 PSG (AJWx) | Date | April 22, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles | | |

IV.    <u>Conclusion</u>

      Based on and according to the foregoing, the Court GRANTS Plaintiffs' *Ex Parte* Application for a Temporary Restraining Order and Orders Defendant to Show Cause why Issuance of a Preliminary or Permanent Injunction is not appropriate in this case.

      **IT IS SO ORDERED.**