O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-2874 PSG (AJWx) | Date | June 23, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles, *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | | |
|---|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order Issuing a Preliminary Injunction

Pending before the Court is this Court's Order to Show Cause re: Issuance of a Preliminary Injunction. The Court heard argument on the matter on June 20, 2011. After considering all the evidence submitted, the papers filed in support and opposition, and the arguments offered at hearing, the Court ISSUES a preliminary injunction.

I.      Background

Plaintiffs Tony Lavan, Caterius Smith, William Vassie, Ernest Seymore, Lamoen Hall, Shamal Ballantine, Byron Reese, and Regina Wilson ("Plaintiffs") bring this putative civil-rights class action against the City of Los Angeles (the "City" or "Defendant") asserting claims under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, Article 1 § 7 and Article 1 § 13 of the California Constitution, California Civil Code § 52.1, California Civil Code § 2080, and common law conversion.

Plaintiffs, eight homeless individuals living in the City of Los Angeles's "Skid Row" area, allege that since February 2011, the City, through the Los Angeles Police Department ("LAPD") and Bureau of Street Services, has confiscated and destroyed the personal possessions they temporarily left in public spaces in order to use the restroom, eat a meal, or, among other things, appear in court. *See Compl.* ¶¶ 1-6. Plaintiffs also allege that the City did this in furtherance of an ongoing practice and policy of ridding the area of its homeless population. *Compl.* ¶¶ 4, 6, 19, 24.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2874 PSG (AJWx) | Date | June 23, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles, *et al.* | | |

Plaintiffs expect that the City will "continue these practices of confiscating and immediately destroying the property of homeless individuals from the public streets and sidewalks without a warrant and without notice." *Compl.* ¶ 50. On April 22, 2010, this Court issued a temporary restraining order (the "April TRO") enjoining Defendant's purportedly unconstitutional practices. *See* Dkt. #11 (hereinafter "*TRO*"). At the same time, the Court ordered the parties to show cause why a preliminary injunction should not issue. Pending before the Court is that Order to Show Cause.

II.     Legal Standard

A party seeking a preliminary injunction must make a "clear showing" of each of the following elements: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) an advancement of the public interest. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 129 S. Ct. 365, 374, 376, 172 L. Ed. 2d 249 (2008) (citation omitted). "The Ninth Circuit recently reaffirmed that within this framework a preliminary injunction also is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of the hardships tips sharply in the plaintiff's favor, thereby allowing district courts to preserve the status quo where difficult legal questions require more deliberate investigation," so long as the other remaining *Winter* factors are met. *Sencion v. Saxon Mortg. Servs., LLC*, CV 10-3108 JF, 2011 WL 1364007, at *2 (N.D. Cal. Apr. 11, 2011) (internal quotation omitted); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (allowing for a post-*Winter* "sliding scale" analysis in preliminary injunction inquiries where "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another").

III.    Discussion

This Court granted Plaintiffs' TRO after concluding that Plaintiffs would likely succeed on their Fourth and Fourteenth Amendment claims, and that the balance of equities tipped sharply in Plaintiffs' favor. *See TRO* at 6-7. With the advantage of additional briefing, the City now claims that Plaintiffs have not established a likelihood of success on the merits, that the City's practices do not cause irreparable harm, and that the balance of equities and public

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2874 PSG (AJWx) | Date | June 23, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles, *et al.* | | |

interest favors the Government.[1]  For the reasons that follow, the Court disagrees and issues a preliminary injunction.

      A.      Likelihood of Success on the Merits

Briefly stated, the Complaint alleges that the City, until the Court issued the TRO, was seizing and destroying Plaintiffs' property in violation of the Fourth Amendment's protections against unreasonable searches and seizures and the Fourteenth Amendment's due process clause. Plaintiffs submitted declarations indicating that the City has taken and destroyed personal property that was never abandoned, but only left unattended temporarily. *See, e.g.*, *Lavan Decl.* ¶ 5 ("I then walked . . . to take a shower at the Union Rescue Mission. I was gone a total of approximately 20 to 25 minutes at the most. As I was walking back . . . I ran into [Plaintiff Smith] . . . [who] told me that the police were there and that the [property] was being taken and crushed. I ran back . . . [m]y [property] was already destroyed."). This conduct is the same type of conduct that was enjoined in earlier lawsuits against the City for confiscation and destruction of homeless individuals' property. *See Justin v. City of Los Angeles*, CV 00-12352 LGB AIJ, 2000 WL 1808426, at *13 (C.D. Cal. Dec. 5, 2000) (granting a temporary restraining order to stop, among other things, "confiscating the personal property of the homeless when it has not been abandoned and destroying it without notice").

          1.      The Fourth Amendment

The City makes a number of arguments in an attempt to show that Plaintiffs will not prevail on the merits of this case. First, the City insists that the "seizure of items in a public place does not violate the Fourth Amendment or Article I, Section 13 of the California

---

[1] At the preliminary injunction hearing on June 20, 2011, the City requested permission to submit additional supplemental declarations to address issues such as certain Plaintiffs' standing to bring the claims in this case (for example, the City suggested that Plaintiff Hall objected to the seizure of property not belonging to him). The City's request is denied. The City has had ample time to submit declarations to the Court and issues such as standing could have, and should have, been raised in response to the Complaint or Plaintiffs' declarations submitted in support of the TRO Application. To the extent the City seeks an opportunity to respond to the evidence submitted by Plaintiffs' in their preliminary injunction Reply, the Court notes that the City did not hesitate to file an unauthorized supplemental declaration, where it could have, but did not, respond to any of Plaintiffs' evidence.

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-2874 PSG (AJWx) | Date | June 23, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles, *et al.* | | |

Constitution where there is objective evidence of abandonment or probable cause for the property's seizure." *Response* 4:3-6. In addition, the City claims that "property in a public place that is evidence of criminality may be seized under the plain view exception to the Fourth Amendment," and that the property here was evidence of a violation of Los Angeles Municipal Code §§ 56.11 and 41.45(b)-(c). *Response* 12:19-13:5. Both general propositions of law are not necessarily incorrect, but neither aids the City in its attempt to defeat Plaintiffs' efforts to secure a preliminary injunction.

  As explained in the April TRO, Plaintiffs have a legitimate expectation of privacy in their property and the Fourth Amendment's protections against unreasonable searches and seizures applies. *See Lehr v. City of Sacramento*, 624 F. Supp. 2d 1218, 1235 (E.D. Cal. 2009) (citing *Justin v. City of Los Angeles*, CV 00-12352 LGB AIJ, 2000 WL 1808426, at *9 (C.D. Cal. Dec. 5, 2000)); *Kincaid v. City of Fresno*, CV 06-1445 OWW SMS, 2006 WL 3542732, at *35-37 (E.D. Cal. 2006) (issuing a preliminary injunction after holding that "[t]he City's seizure of homeless people's personal property without probable cause and the immediate and permanent destruction of such property without a method to reclaim or to assert the owner's right, title, and interest to recovery such personal property violates the Fourth Amendment to the United States Constitution and Article I § 13 of the California Constitution"). This conclusion is not necessarily altered by the fact that the City may have found the property in a public place. *See, e.g., Soldal v. Cook County*, 506 U.S. 56, 68, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992) ("an officer who happens to come across an individual's property in a public area could seize it only if Fourth Amendment standards are satisfied—for example, if the items are evidence of a crime or contraband.").

  Despite this, the City maintains that the Fourth Amendment does not apply to Plaintiffs' property because "[i]t is well established that individuals who leave items in public places do not have a reasonable expectation of privacy in them." *See Response*, 8:21-22. In doing so, the City attempts to distinguish the *Lehr*, *Kincaid* and *Justin* cases cited by the Court in the April TRO. The Court is troubled by the City's straight-faced misstatement of the law, especially in light of abundant authority to the contrary. *See, e.g., Soldal*, 506 U.S. at 68. In support of its proposition that there can be no expectation of privacy for any item left in a public place, the City cites to, *inter alia*, the Supreme Court's 1960 decision in *Abel v. United States*, the Ninth Circuit 1969 decision in *United States v. Knight*, and the District of Columbia Circuit's decision in *United States v. Wider*. The City offers no explanation as to why those abandoned-property cases stand for such a sweeping proposition of law. In order to prevent further reliance on inapplicable cases, the Court explains why those cases do not support the City's legal position despite the City's failure to do the same.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2874 PSG (AJWx) | Date | June 23, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles, *et al.* | | |

In *Abel v. United States*, 362 U.S. 217, 240-41, 80 S. Ct. 683, 4 L. Ed. 2d 668 (1960), the United States Supreme Court affirmed the lower court's decision to admit two pieces of "abandoned" evidence found in an empty hotel room "immediately after petitioner had paid his bill and vacated his room," because at the time the evidence was found, "the hotel then had the exclusive right to its possession, and the hotel management freely gave its consent that the search be made." Similarly inapplicable is the Ninth Circuit's brief, twelve-sentence decision in *United States v. Knight*, 412 F.2d 292 (9th Cir. 1969), in which the Ninth Circuit simply held that a defendant did not have standing to "protest the seizure of abandoned property." Finally, in *United States v. Wider*, 951 F.2d 1283, 1285-86 (D.C. Cir. 1991), the Court of Appeals for the District of Columbia Circuit held that it was not clear error for the district court to conclude that the defendant "abandoned" a bag of cocaine by leaving it in a public place and walking away from it when the police noticed him, thus making the search of the bag lawful.

How the City sincerely believes that *Abel*, *Knight* and *Wider* indicate lack of Fourth Amendment protections for the homeless population's property is beyond comprehension. In fact, the Northern District of California explicitly rejected almost identical arguments citing to *Wider* in another case involving homeless-property sweeps: "Initially, the City defends on the basis that there is no reasonable expectation of privacy when property is left unattended in public places, citing *United States v. Wider* . . . As plaintiffs correctly argue, however, this is true only where the property is intentionally abandoned," not simply "unattended." *Joyce v. City and County of San Francisco*, 846 F. Supp. 843 (N.D. Cal. 1994). The only explanation for the City's untenable position is that it assumes that all the homeless' property is abandoned. But, as discussed below, such an assumption is unwarranted, especially in light of Plaintiffs' clear showing that the City confiscated and destroyed unabandoned property in this case.

The City's exaggeration of the lack of protections afforded to the property of the homeless population does not stop there. The City also argues that the Fourth Amendment's protections coincide with the distance that a homeless person is from his or her property. In the City's own words, "the homeless have an expectation of privacy in their property when they are near it. When they walk away from it, the expectation of privacy dissipates," and the property can be considered abandoned. *Response* 9:9-11. This argument, too, has been rejected by a court considering a similar case involving property of the homeless. Specifically, in *Kincaid v. City of Fresno*, the court held that:

> "The City has attempted to justify its policies and practices by its rule that the property of the homeless that it seizes and destroys is 'abandoned' and is therefore 'trash.' The City's 'rule[]' . . . is that if a homeless person is not literally beside

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2874 PSG (AJWx) | Date | June 23, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles, *et al.* | | |

his or her property laying claim to it during a sweep, then the City deems that property to be abandoned, making the property 'trash,' which is then destroyed. There is no legal justification for this rule which is demeaning as it places no value on the homeless' property and is not honest because the 'rule' purports to transmogrify obviously valuable property into trash."

*Kincaid*, 2006 WL 3542732, at *36.[2]

Moreover, if the test for abandonment was simply distance from property, then the test would be superfluous as any person not within close proximity of the lonely item would be deemed to have abandoned it. The law, however, gives different rights to people who find property based on whether that property is lost or abandoned, and the like, not based on distance from the current or former possessor/owner. *See, e.g., Martin v. Cassidy*, 149 Cal. App. 2d 106, 110 (Cal. Ct. App. 1957); 1 Am. Jur. 2d, *Abandoned, Lost, and Unclaimed Property* § 18 (2011). The Court is not willing to say that all parked cars (even those in no parking zones), locked-up bicycles, and tied-up dogs can be seized and destroyed simply because the owner has stepped away to buy a gallon of milk. And, for the reasons stated in *Kincaid*, the Court is unpersuaded by the City's argument that because the homeless in this case stepped away momentarily to, *inter alia*, get water or shower, they abandoned all their possessions and the City was then free to seize and destroy them.

Thus, the Fourth Amendment's protections extend to the unabandoned property of Plaintiffs. The question then becomes whether the City, in seizing Plaintiffs' property, acted reasonably under the Fourth Amendment. Here too, Plaintiffs have made a clear showing that they are likely to succeed on the merits.

The Fourth Amendment prohibits only those searches and seizures that are "unreasonable." U.S. Const. amend. IV. A seizure of property occurs when there is "some meaningful interference with an individual's possessory interests in that property." *Soldal v.*

---

[2] The Court also notes that the *Lehr* court found that the plaintiff articulated a claim for the deprivation of her Fourth Amendment rights without respect to her proximity to her belongings, as did the *Justin* court. *See Lehr*, 624 F. Supp. 2d at 1235 ("Plaintiffs have a legitimate expectation of privacy in their property and, thus, the property is protected by the Fourth Amendment."); *Justin*, 2000 WL 1808426, at *10 (finding a likelihood of success on the merits of homeless plaintiffs' Fourth Amendment claims despite the fact defendants seized and destroyed the plaintiffs' property "when left momentarily").

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2874 PSG (AJWx) | Date | June 23, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles, *et al.* | | |

*Cook County*, 506 U.S. 56, 61, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984)).  While taking and destroying personal property is a seizure, *see Jacobsen*, 466 U.S. at 124-25, such seizures are only unlawful if they are unreasonable.  To assess reasonableness, courts "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 125.

As an initial matter, the City does not dispute that it disposes of certain items formerly in the possession of homeless persons in Los Angeles, thus, seizing it.  It does dispute whether the property taken was actually abandoned, because if the property was abandoned then seizing it would not be unreasonable. *See, e.g., Hester v. United States*, 265 U.S. 57, 58-59, 44 S. Ct. 445, 68 L. Ed. 898 (1924).  Abandonment is determined by the intent of the owner and the "inquiry should focus on whether, through words, acts or other objective indications, a person has relinquished a reasonable expectation of privacy in the property at the time of the search or seizure." *U.S. v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986).  Such a determination is "to be made in light of the totality of the circumstances, and two important factors are denial of ownership and physical relinquishment of the property." *Id.*

The City claims that it was objectively reasonable for the City to believe that Plaintiffs abandoned all the property seized in this case.  For example, the City points to signs in the Skid Row area alerting people that "Los Angeles Municipal Code section 56.11 prohibits leaving . . . personal property on a public sidewalk," and that there is a "regular clean-up of the area scheduled for Monday through Friday between 8:00 and 11:00 am." *See Response* 9:14-20 (citing *Paulson Decl.* ¶¶ 2,3; *Duncanson Decl.* ¶ 3).  With the presence of this sign, the City makes the assumption that any property left in the area during that time is abandoned. *Id.* 10:3-4.  In addition, according to the City, none of the named Plaintiffs informed the City that they owned the property that was being cleaned up on the dates identified in the Complaint or declarations. *Id.* 10:26-27; *Duncanson Decl.* ¶ 9.  The evidence submitted by Plaintiffs strongly suggests otherwise and clearly shows that the City did in fact know that at least some of the property seized was not abandoned.

Plaintiffs Lamoen Hall (a/k/a "Bling"), Byron Reese and Ernest Seymore claim that their personal property—including a California ID, birth certificate, Social Security cards, family memorabilia, toiletries, cell phones, sleeping bags and blankets—was neatly packed in carts provided by the "Hippie Kitchen," but seized by the City while they watched or while they left momentarily to get water or use the restroom. *See Hall Decl.* ¶¶ 3-5; *Reese Decl.* ¶¶ 2-6; *Seymore Decl.* ¶¶ 3-4.  The property was seized despite the City's declaration that "medications,

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2874 PSG (AJWx) | Date | June 23, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles, *et al.* | | |

legal paperwork, glasses, or other forms of identification" are never dumped, but left for the owner, as is any property found in a Catholic Worker/Hippie Kitchen-labeled cart. *Duncanson Decl.* ¶ 5. And although the City submitted the declaration of John Duncanson—an "investigator for the Bureau of Street Services" who is charged with making the decisions as to what items can be cleaned up and what must be left behind—indicating that he does not remember anyone telling him that the property taken on February 6, 2011 or February 24, 2011 from outside the Catholic Worker was not abandoned, Plaintiffs, in addition to the declarations of the homeless plaintiffs themselves, submit the declarations of two people working at the Catholic Worker on February 24, 2011 indicating that the City knew it was taking unabandoned property. *See Morris Decl.* ¶ 10-12; *Lewis Decl.* ¶¶ 4-7. Jesse Lewis, a declarant for the Plaintiffs, was even able to take pictures of the February 24, 2011 incident. *See Lewis Decl.*, Exs. 1-8. Thus, at least three separate declarations and photographic evidence shows that while Mr. Duncanson might not remember being approached by anyone indicating that the property being dumped was not abandoned, the City was in fact notified that the property belonged to Lamonen Hall and others, and that when attempts to retrieve the property were made, the City took it and destroyed it nevertheless.[3] *See Hall Decl.* ¶ 4, *Morris Decl.* ¶¶ 11-12; *Lewis Decl.* ¶¶ 6-7; *Reese Decl.* ¶¶ 2-4. Moreover, the fact that the carts were neatly packed objectively

---

[3] Other portions of Mr. Duncanson's declarations are similarly unsupported and even conflict with declarations offered by the City. For example, Mr. Dunancson avers that he knows when property is abandoned because, among other things, when no one is around to immediately claim property in a public area, he will leave it "there for *at least a day*, *if not longer* before it is cleaned up." *Duncanson Decl.* ¶ 4 (emphasis added). Yet, Plaintiff Vassie stated that his portable tent was destroyed by the City on March 17, 2011, after being told to move it from its prior location on March 16, 2011, which Plaintiff Vassie did. *See Vassie Decl.* ¶ 4. Officer Joseph, whose declaration the City submitted, confirmed Plaintiff Vassie's account. *See Joseph Decl.* ¶ 8. Mr. Duncanson states, however, that Plaintiff Vassie's portable tent had been at the new location since "March 15, 2011." *Duncanson Decl.* ¶ 9(d). Plaintiff Vassie could not have both left his tent at the new location since March 15, 2011—as claimed by Mr. Duncanson—and have moved the tent there on March 16, 2011—as claimed by Officer Joseph and Plaintiff Vassie. Moreover, the fact that the City instructed Plaintiffs to move their portable tents and Plaintiffs followed the instruction (likely less than a day before destruction), is objective evidence that the moved tents were not abandoned. The City relied heavily on this aspect of Mr. Duncanson's declaration at oral argument to establish that the City only disposes of abandoned property left unattended for at least a day. The Court, however, cannot simply take Mr. Duncanson's declaration at face value in light of the other evidence offered by both Plaintiffs and the City.

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-2874 PSG (AJWx) | Date | June 23, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles, *et al.* | | |

suggests ownership: "[T]he homeless often arrange their belongings in such a manner as to suggest ownership-e.g., they may lean it against a tree or other object or cover it with a pillow or blanket; []by its appearance, the property belonging to homeless persons is reasonably distinguishable from truly abandoned property." *Pottinger v. City of Miami*, 810 F. Supp. 1551, 1559 (S.D. Fla. 1992); *Morris Decl.* ¶ 5 (indicating that on February 24, 2011, the City took property contained in Hippie Kitchen carts, even though "[t]he carts were lined up in a row on the sidewalk . . . there was not a pile of trash in the street . . .[and t]he carts were neatly packed up").

With this in mind, the Court concludes that Plaintiffs have clearly shown that they will likely succeed in establishing that the City seized and destroyed property that it knew was not abandoned. As a result, it is necessary to balance this invasion of Plaintiff's possessory interests in their personal belongings with the City's reasons for taking the property. At the TRO hearing in April and in the papers filed in conjunction with the potential issuance of a preliminary injunction, the City repeatedly cited to the need to keep its streets clean in order to avert a severe impact to "the public interest in health, safety, and the economic vitality of the Skid Row area." *Response* 25:6-7. The Court, however, already addressed this concern in the TRO and sees no reason to change its view now:

> Here, Defendants may be slowed in their efforts to keep the City, and especially the downtown area, clean and safe. [An] injunction may disturb their new initiative to revitalize and uplift communities, to improve the streets and sidewalks, and to diminish the crime rate . . .  Plaintiffs, however, risk a greater harm if the injunction is not granted: the violation of their First, Fourth, and Fourteenth Amendment rights. The Court in *Pottinger* eloquently expressed the dangers homeless individuals face in analogous situations:
> "The court recognizes the City's interest in keeping its parks and public areas clear of unsightly and unsafe items. However, the City's interest in having clean parks is outweighed by the more immediate interest of the plaintiffs in not having their personal belongings destroyed. As this court previously found, the loss of such items such as clothes and medicine threatens the already precarious existence of homeless individuals by posing health and safety hazards."
> *Pottinger,* 810 F. Supp. at 1573. Similarly, Defendants' actions are likely to displace homeless individuals and threaten their ability to access charities for food, shelter, and assistance in Skid Row. As the *Pottinger* Court stated, Defendants' actions are likely to "threaten[ ] the already precarious existence of homeless individuals by posing health and safety hazards."

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2874 PSG (AJWx) | Date | June 23, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles, *et al.* | | |

*TRO* at 7 (quoting *Justin*, 2000 WL 1808426, at *11). The Court is certainly not blind to the concerns of the City, but agrees with the other courts that have considered the issue and found that similar conduct, even by the same defendant in this case, violated the Fourth Amendment despite an inherent interest in keeping public areas clean and prosperous. *See Lehr v. City of Sacramento*, 624 F. Supp. 2d 1218; *Justin v. City of Los Angeles*, 2000 WL 1808426; *Kincaid v. City of Fresno*, 2006 WL 3542732; *Pottinger v. City of Miami*, 810 F. Supp. 1551.

The City's final attempt to justify the seizure and destruction of property that is not abandoned is based on the Los Angeles Municipal Code ("LAMC"). More specifically, the City argues that it was entitled to collect Plaintiffs' property as it was in "plain view" and evidence of "criminal" conduct under LAMC sections 56.11, and 41.45. LAMC § 56.11 provides in relevant part that "[n]o person shall leave or permit to remain any merchandise, baggage, or any article of personal property upon any parkway or sidewalk." LAMC § 41.45 prohibits abandoning or leaving any shopping cart removed from "the owner's premises" in a public place.[4] Even if violation of these municipal code provisions warrant application of the exception allowing for the seizure of evidence of a crime found in plain view, *see Horton v. California*, 496 U.S. 128, 137-39, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990), LAMC § 56.11, as applied, conflicts with California Civil Code § 2080, which requires that "any person or public entity or private entity that finds and takes possession of any . . . personal property" must make a reasonable effort to return it or turn it over to the police, who must notify the owner and hold it for at least 90 days,[5] *see* Cal. Civ. Code § 2080; *Candid Enters. Inc. v. Grossmont Union High Sch. Dist.*, 39 Cal.3d 878, 885 (1985) ("if otherwise valid local legislation conflicts with state law, it is preempted by such law and is void"). It should also be noted that an otherwise lawful seizure "at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" *Jacobsen*, 466 U.S. at 124. Therefore, assuming *arguendo* that the City had a valid reason to seize Plaintiffs unabandoned property under the LAMC, its conduct of

---

[4] Because all the evidence presented suggests that the property taken in conjunction with the February 6, 2011 and February 24, 2011 incidents outside the Hippie Kitchen came out of Hippie Kitchen carts, which are provided to homeless persons for the express purpose of keeping their belongings in them, the Court need not address the City's LAMC § 41.45 argument.

[5] Civil Code § 2080 also permits a public agency to adopt its own similar regulations for the "care, restitution, sale or destruction of unclaimed property in its possession," but even under an alternative system, a public agency must still hold the property for "at least three months." Cal. Civ. Code § 2080.6(a).

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-2874 PSG (AJWx) | Date | June 23, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles, *et al.* | | |

immediately destroying the property rather than holding it pursuant to Cal. Civ. Code § 2080, [6] turns what could be an otherwise lawful seizure into an unlawful one by forever depriving an owner of his or her interests in possessing the property without recourse, in violation of § 2080, and without a sufficient governmental interest.

The property of the homeless is entitled to Fourth Amendment protection. Here, Plaintiffs have clearly shown a strong likelihood of success on the merits of the claim that in collecting and destroying Plaintiffs' property on the spot, the City unlawfully and unreasonably seized personal property in violation of the Fourth Amendment.

    2.    <u>The Fourteenth Amendment</u>

Under the Fourteenth Amendment to the United States Constitution, "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of laws." U.S. Const. amend. XIV. Article I, section 7 of the California Constitution similarly provides that a "person may not be deprived of life, liberty, or property without due process of law." Plaintiffs' personal possessions, perhaps representing everything they own, must be considered "property" for purposes of this due process analysis. *See Fuentes v. Shevin*, 407 U.S. 67, 84, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972); *see also Pottinger v. City of Miami*, 810 F. Supp. 1551, 1559 (S.D. Fla. 1992) (holding that confiscation and destruction of the property of the homeless violates both the Fourth and Fourteenth Amendments after noting that "a homeless person's personal property is generally all he owns; therefore, while it may look like 'junk' to some people, its value should not be discounted"). As such, before the City can seize and destroy Plaintiffs' property, it must provide notice and an "opportunity to be heard at a meaningful time and in a meaningful manner," *Matthews v. Eldridge*, 424 U.S. 319, 339-43, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), except in "extraordinary situations where some valid governmental interest is at stake that justifies the postponing of the hearing until after the event," *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993). Under *Matthews v. Eldridge*, a court is to consider three factors to determine whether the basic procedural due process requirements have been met:

---

[6] The Court recognizes that Mr. Duncanson claims that the City keeps property that has been seized *and* objected to at the time of seizure, for at least 72 hours. *Duncanson Decl.* ¶ 7. The Court has already explained its concerns with Mr. Duncanson's declaration, and further notes that Plaintiff Reese went to the dump during the time when his property should have been available, but was told that it had already been "trashed." *Reese Decl.* ¶ 3.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2874 PSG (AJWx) | Date | June 23, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles, *et al.* | | |

(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail.

*Matthews v. Eldridge*, 424 U.S. at 321.

The City claims that it provides notice before seizing homeless individuals' property via the street signs indicating sidewalk cleanups between certain hours. *See Duncanson Decl.* ¶ 2. At oral argument, the City acknowledged that this notice, often posted at a very high level with small print, obscured by foliage or taped over, is inadequate. *See Sobel Decl.* ¶¶ 3-12, Exs. 1-10. Even if this notice was adequate, however, Plaintiffs have established the lack of either pre or post-deprivation opportunities to be heard. For example, the City claims that if a person objects to the seizure of his or her property *while* it is being seized, then that person can go to the dump within 72 hours and retrieve his or her property. *Duncanson Decl.* ¶ 7. This is contradicted by Byron Reese, who avers that he was told to go to the dump to collect items that had been seized by the City, but when he got there a few hours later he was informed that all the property had been "trashed." *Reese Decl.* ¶ 3. Moreover, even if there was a meaningful "post-deprivation," 72-hour opportunity to be heard at the dump, it only affects those people who were present to witness and object to the seizure of their property, not those who temporarily left to attend other business, use the restroom, eat a meal or get some water; they are deprived of their property without any recourse at all.[7] *See Duncanson Decl.* ¶ 7 ("*If* someone *approaches* me and informs me that the property belongs to them," but the property has already been loaded in the dump truck, "*then* we provide a map to the dump site," where that "particular load" is segregated and "kept for three days before it is brought to the landfill." (emphasis added)).

---

[7] At oral argument, the City argued that it provides a post-deprivation opportunity to be heard and collect seized property through "bag and tag" programs administered by the LAPD and the Central City East Association Business Improvement District ("BID"). *See also Response* 2:16-3:7. The Court does not doubt the existence of those programs, but the City has still failed to overcome Plaintiffs' showing that unabandoned property was seized and immediately destroyed. That the LAPD and BID have the *ability* to "bag and tag" seized property is substantially different than actually holding unabandoned, seized property and affording people the opportunity to be heard and collect it. No evidence submitted supports anything other than the City's *ability* to "bag and tag."

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2874 PSG (AJWx) | Date | June 23, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles, *et al.* | | |

The City's admission that it has a practice of on-the-spot destruction of seized property only bolsters Plaintiffs' Fourteenth Amendment claim.[8] This practice presents an enormous risk of erroneous deprivation, which could likely be mitigated by certain safeguards such as adequate notice and a meaningful opportunity to be heard. *See Kincaid*, 2006 WL 3542732, at *38. Together, the declarations and state of the law with respect to the Fourteenth Amendment's due process requirements make it such that Plaintiffs have, again, sufficiently shown a likelihood of success on the merits under *Winter*. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982) ("the state may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement"); *Propert v. District of Columbia*, 948 F.2d 1327, 1335 (D.C. Cir. 1991) ("Although [a state] may have a strong interest in the prompt removal of supposed junk vehicles from the streets, its interest in the immediate destruction of such vehicles is far from apparent. On balance, the severity of the deprivation imposed on the vehicle's owner, combined with the potential vagaries of the enforcing officer's determinations, outweighs any government interest in the immediate destruction of a towed vehicle that has been identified as "junk" and compels the conclusion that post-towing process is required."). The City admits that for Plaintiffs like Tony Lavan, whose property was seized and destroyed while he showered at a local shelter, no pre or post-deprivation hearing is afforded at all, in violation of the Fourteenth Amendment. *See Lavan Decl.* ¶ 5. Thus, Plaintiffs have clearly shown that they are likely to succeed on the merits of their Fourteenth Amendment claims because the City admittedly fails to provide any meaningful pre or post-deprivation opportunity to be heard before or after seizing and destroying property belonging to Skid Row's homeless population. *See Fuentes v. Shevin*, 407 U.S. 67, 84-87, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972) (the government must provide notice and a meaningful opportunity to be heard in cases where common household goods are seized).

Without citing to a single case to justify its position, the City argues that it is "impracticable to provide a pre-deprivation hearing" when seizing the homeless population's property and therefore no opportunity to be heard must be afforded before or after a seizure. Again, the Court recognizes the City's desire for an efficient street cleaning process, but, as explained by the Supreme Court, often efficiency must take a backseat to constitutionally protected interests:

> A prior hearing always imposes some costs in time, effort, and expense, and it is often more efficient to dispense with the opportunity for such a hearing. But these

---

[8] This admission also dooms the City's argument that no pre-deprivation due process is needed where a loss is due to "a random and unauthorized act by a state employee." *Response* 17:3-4.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2874 PSG (AJWx) | Date | June 23, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles, *et al.* | | |

> rather ordinary costs cannot outweigh the constitutional right. . . Procedural due process is not intended to promote efficiency or accommodate all possible interests: it is intended to protect the particular interests of the person whose possessions are about to be taken. The establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication. But the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones.

*Fuentes*, 407 U.S. 67, 92 n.22 (quotations and citations omitted). Plaintiffs have established that, in some cases, the City both seizes and destroys Plaintiffs' necessities without any meaningful pre or post-deprivation opportunity to be heard. In the absence of such process, Plaintiffs have established a strong likelihood of success on the merits of their Fourteenth Amendment claim.

      Finally, the Court notes that Federal Rule of Civil Procedure 65(d) provides that an injunction or restraining order only binds: "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with [the parties]." Although this lawsuit is stylized as a class-action, the equivalent of class-wide relief may still be appropriate despite the fact that a class has not yet been certified. In *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486 (9th Cir. 1996), the Court held that "[w]hile injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification, an injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit-even if it is not a class action- *if such breadth is necessary to give prevailing parties the relief to which they are entitled.*" *Easyriders Freedom F.I.G.H.T.*, 92 F.3d at 1501-02 (internal citations omitted) (emphasis in original). As discussed, the allegations in the Complaint indicate that the City is seizing and destroying property that has been temporarily left in public places by its owner, but not abandoned. Thus, it would likely be impossible for the City to determine whose property is being confiscated—i.e. whether it is one of the named Plaintiffs or another homeless person—and a preliminary injunction, as fashioned below, is necessary to "give prevailing parties the relief to which they are entitled." *Id.*

      B.     <u>Irreparable Injury</u>

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2874 PSG (AJWx) | Date | June 23, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles, *et al.* | | |

The Ninth Circuit has held that "an alleged constitutional infringement will often alone constitute irreparable harm." *Associated Gen. Contractors of Cal., Inc. v. Coalition for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991); *see also Citicorp Servs., Inc. v. Gillespie*, 712 F. Supp. 749, 753 (N.D. Cal. 1989) ("In various cases, courts in the Ninth Circuit have presumed irreparable harm from an alleged violation of constitutional rights."). Plaintiffs have shown the likelihood of proving past constitutional violations and there is a potential for continuing violations, especially considering that the City has been ordered to stop similar practices in the past. *See Justin v. City of Los Angeles*, 2000 WL 1808426, at *13; *Compl.* ¶¶ 4-6, 20, 24 (each paragraph generally alleging a continuing policy to rid Skid Row of its homeless population).

  C. <u>Balancing of Equities and the Public Interest</u>

A Court considering an application for a preliminary injunction must identify the harm that a injunction might cause a defendant and weigh it against the injury to a plaintiff. *Justin*, 2000 WL 1808426, at *11 (citing *Armstrong v. Marurak*, 94 F.3d 566, 568 (9th Cir. 1996)). As indicated above and in the April TRO, the City claims that an injunction would hamper its efforts to ensure the health, safety and the economic vitality of the Skit Row area." *Response* 25:6-8. However, the City's interest in clean streets is outweighed by Plaintiffs' interest in maintaining the few necessary personal belongings they might have. *See TRO* at 7. The City will still be able to lawfully seize and detain property, as well as remove hazardous debris and other trash; issuance of the injunction would merely prevent it from *unlawfully* seizing and destroying personal property that is not abandoned without providing any meaningful notice and opportunity to be heard. This not only benefits the Plaintiffs, but the general public as well. *See Pottinger,* 810 F. Supp. at 1573.

  D. <u>The Language of the Injunction</u>

Federal Rule of Civil Procedure 65(d) requires that "[e]very order granting and in junction and every restraining order *must*: (A) state the reason why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Thus, the Court must clearly state the specific terms of the injunction in order to "prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidr v. Lessard*, 414 U.S. 473, 476, 94 S. Ct. 713, 38 L. Ed. 2d 661 (1974). The Court finds that the following language satisfactorily complies with Rule 65's requirements:

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2874 PSG (AJWx) | Date | June 23, 2011 |
|---|---|---|---|
| Title | Tony Lavan, *et al.* v. City of Los Angeles, *et al.* | | |

Defendant City, its agents and employees, are hereby preliminarily enjoined from doing any of the following:

1. Seizing property in Skid Row absent an objectively reasonable belief that it is abandoned, presents an immediate threat to public health or safety, or is evidence of a crime, or contraband; and

2. Absent an immediate threat to public health or safety, destruction of said seized property without maintaining it in a secure location for a period of less than 90 days.

Defendant City, its agents and employees, is further directed to leave a notice in a prominent place for any property taken on the belief that it is abandoned, including advising where the property is being kept and when it may be claimed by the rightful owner.

IV.     Conclusion

Based on the foregoing Plaintiffs have clearly shown a likelihood of success on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tip in their favor and that an injunction is in the public interest.  As a result, the Court ISSUES a PRELIMINARY INJUNCTION.

**IT IS SO ORDERED.**