CAROL A. SOBEL SBN 84483
JOHN P. GIVEN SBN 269787
LAW OFFICE OF CAROL A. SOBEL
3110 Main Street, Suite 210
Santa Monica, CA 90405
T. (310 393-3055 F. 310 451-3858
E. Carolsobel@aol.com

**FILED**
**CLERK, U.S. DISTRICT COURT**

January 27, 2015

**CENTRAL DISTRICT OF CALIFORNIA**
**BY: ___WH___ DEPUTY**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| TONY LAVAN, CATERIUS SMITH, WILLIE VASSIE, ERNEST SEYMORE, LAMOEN HALL, SHAMAL BALLANTINE, BYRON REESE, REGINALD WILSON, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF LOS ANGELES, <br><br> Defendants. | Case No.: cv 11-02874 PSG (AJWx) <br><br> AMENDED COMPLAINT: CIVIL RIGHTS <br><br> CLASS ACTION: F.R.CIV.P. 23(b)(2) <br><br> 42 U.S.C. § 1983 AND FOURTH, FIFTH AND FOURTEENTH AMENDMENTS <br><br> CALIFORNIA CONSTITUTION ARTICLE I, §§ 7 AND 13 <br><br> CALIFORNIA CIVIL CODE §§52, 52.1 <br><br> CALIFORNIA CIVIL CODE § 2080 <br><br> CONVERSION |

**JURISDICTION AND VENUE**

1.     This is an action for injunctive relief pursuant to 42 U.S.C. § 1983 and F.R.Civ.P. 23(b)(2), as well as damages, based upon the ongoing violations by the Defendant of the rights secured to Plaintiffs by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.  Jurisdiction exists based on 28 U.S.C. § 1331 and 1343 in that this case is brought pursuant to 42 U.S.C. §1983 and raises questions of federal constitutional law under the Fourth, Fifth and Fourteenth Amendments.  Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.  The court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

2.     Venue is proper in the Central District in that the events and conduct complained of in this action all occurred in the Central District.

**INTRODUCTION**

3.     This case represents a road the CITY has traveled down before.  In 1987 and again in 2000, injunctions were issued against the defendant City of Los Angeles ("CITY"), barring the CITY from summarily confiscating and destroying the property of homeless individuals in the Skid Row area without due process.  In 2006, the City settled a class action lawsuit brought on behalf of a number of homeless individuals whose property was confiscated and destroyed in a single sweep at the Venice Beach on Labor Day weekend in 2004.  Then, as now, if the individuals were present and attempted to save their property, they were threatened by the police with arrest.  Despite these repeated injunctions and actions against the CITY, once again, the most vulnerable population in our community comes to court to request yet another order directing the CITY to stop seizing and demolishing the few belongings they have left.

4.     Plaintiffs are eight homeless individuals living in the City of Los Angeles. Over the course of the last two months, their personal possessions were confiscated and immediately destroyed by CITY Public Works employees at the direction of the Los Angeles Police Department ("LAPD") as a part of an ongoing practice targeting the

1

homeless on Skid Row. Plaintiffs seek to represent a class of similarly situated homeless men and women who have suffered and will continue to suffer the same type of loss as a result of the same unlawful practice and policy.

5. As a result of the illegal seizures, Plaintiffs have lost indispensable personal property such as shelters, medicine, clothing, personal papers, family photos and portable electronics. Some of the property is irreplaceable. There is no legitimate reason to seize the property in the first place, much less immediately destroy it, often while Plaintiffs are present, pleading to spare their possessions and watching helplessly as what little they have is swept up and crushed. The only real reason for this policy is to destroy the property of individuals such as Plaintiffs, who are homeless and who are regarded by the CITY as nothing more than garbage to be removed from City streets.

6. A Temporary Restraining Order is needed to prevent imminent harm to Plaintiffs. Defendant has made clear through the repeated seizure and destruction of Plaintiffs' property that this is part of an ongoing campaign on Skid Row. As recently as March 17, 2011, LAPD officers destroyed Plaintiffs' property as they attended to such basics as taking a shower at the Union Rescue Mission, going to court, and getting a meal. Unless restrained by an Order of this Court, these unlawful acts will continue.

## DEFENDANT'S PAST UNLAWFUL CONDUCT

**The 1987 Temporary Restraining Order**

7. On February 25, 1987, the Los Angeles Superior Court issued a Temporary Restraining Order in *Adam Young Bennion v. City of Los Angeles*, C637718. The terms of the restraining order included a requirement that the City give 12 hours written notice before removing property on the presupposition that it has been abandoned on the public streets of Skid Row. Exhibit A, p.28 ("III. Notice Requirements"). The *Bennion* Order required City employees to post a "prominent notice in a conspicuous place on the cite. The notice shall include the specific citation to the law allegedly violated and state that the property will be subject to disposal if the violation is not corrected within

twelve hours from the time the notice is posted. *Id.*

**The *Justin* Case**

8. In 2000, the City again began a campaign of confiscating the property of homeless persons, ordering them to move away from their belongings, and then immediately crushing all of the property in dump trucks. In response to the CITY's unlawful actions, several individuals filed a lawsuit entitled *Justin v. City of Los Angeles*, CV 00-12352 LGB (AIJx). On November 5, 2001, the Honorable Lourdes Baird entered a permanent injunction against the City, in corporating the terms of the *Bennion* retraining order and enjoining, *inter alia,* the City would "not confiscate personal property that does not appear abandoned and destroy it without notice. Where applicable, defendants will give notoice in compliance with the temporary restraining order issued in *Bennion v. City of Los Angeles* (C637718). Any personal property that does not appear intentionally abandoned collected by defendants will be retained for 90 days as provided in California Civil Code section 2080.2." Exhibit A, p.18, ¶5. At the request of the CITY, the injunction expired after 48 months. *Id.* at lines 23-28.

**The *Noe* Case**

9. Shortly after midnight just before Labor Day in 2004, the LAPD conducted a sweep of the Venice Beach area, seizing and immediately destroying the property of several dozen homeless individuals. None of the property was abandoned. Many of the owners of the property were present and were allowed to take some of their property, but were threatened with arrest when they asked to take additional items. A class action lawsuit was filed seeking compensation for the injuries resulting from the loss of personal possessions. *Richard Noe v. City of Los Angeles*, cv 05-08374. In November, 2006, the Honorable Andrew Guilford approved a settlement for the class of individuals whose property was destroyed in the *Noe* case. Exhibit C.

2GE95KG0

# PARTIES

**Plaintiffs:**

10. Plaintiff TONY LAVAN is an homeless individual currently residing on the streets of the Skid Row area of Los Angeles. On March 17, 2011, his EDAR was confiscated and destroyed while Mr. LAVAN was at the Union Rescue Mission using the shower facilities. He was gone from his property for no more than 30 minutes, if that. His property was not abandoned. He sues on behalf of himself and all similarly situated individuals.

11. Plaintiff CATERIUS SMITH is an homeless individual currently residing on the streets of the Skid Row area of Los Angeles. On March 17, 2011, his EDAR was confiscated and destroyed while Mr. SMITH was present. Mr. SMITH had just returned from court, observed the LAPD officers and Public Works employees seizing the EDARS. Mr. SMITH pleaded to rescue his property but was not permitted to gather more than a few items. His property was not abandoned. He sues on behalf of himself and all similarly situated individuals.

12. Plaintiff WILLIE VASSIE is an homeless individual currently residing on the streets of the Skid Row area of Los Angeles. On March 17, 2011, his EDAR, bicycle and shopping cart with all of his possessions was confiscated and destroyed by LAPD officers and Public Works employees. He lost medications and all of his personal property. Mr. VASSIE's property was not abandoned. He sues on behalf of himself and all similarly situated individuals.

13. Plaintiff SHAMAL BALLANTINE is an homeless individual currently residing on the streets of the Skid Row area of Los Angeles. On March 17, 2011, his EDAR with all of his possessions was confiscated and destroyed by LAPD officers and Public Works employees. Mr. BALLANTINE had gone to the bank a few blocks from where his EDAR was located. He was away from this property for no more than about

20 minutes; his property was not abandoned. He sues on behalf of himself and all similarly situated individuals.

14. Plaintiff ERNEST SEYMORE is an homeless individual presently residing on the streets of the Skid Row area of Los Angeles. On February 6, 2011, his shopping cart with all of his possessions was confiscated and destroyed by LAPD officers and Public Works employees. Mr. SEYMORE was just a few feet from his cart, about to cross the street, when the officers and a skip loader came down the street and grabbed his cart. There were five other carts he had been watching for other individuals. All were taken and everything in them was destroyed as Mr. SEYMORE watched helplessly. His property was not abandoned. He sues on behalf of himself and all similarly situated individuals.

15. Plaintiff LAMOEN HALL is an homeless individual presently residing on the streets of the Skid Row area of Los Angeles. On February 24, 2011, his shopping cart with all of his possessions was confiscated and destroyed by LAPD officers and Public Works employees. Mr. HALL had left his cart on the corner of 6th and Gladys Streets for no more than 10 minutes to fill several jugs with water at the Hippie Kitchen. When he returned, he observed LAPD officers and a skip loader in the street. All of his property had been dumped out of his carts. He was not permitted to recover any of his property, even though it was in the street and had not yet been put in the skip loader and destroyed. His property was not abandoned. He sues on behalf of himself and all similarly situated individuals.

16. Plaintiff BYRON REESE is an homeless individual currently residing on the streets of the Skid Row area of Los Angeles. He works as a custodian to support himself. On February 24, 2011, his shopping cart with all of his possessions was confiscated and destroyed by LAPD officers and Public Works employees. Mr. REESE's cart was located on the corner of 6th and Gladys Streets. He left his cart for

5

a few minutes to use the restroom at the park across the street. When he returned, he observed LAPD officers and a skip loader taking his cart and that of Plaintiff HALL. All of Mr. Reese's important personal papers, identification documents, and other crucial personal belongings were in a leather satchel. The satchel was visible and within reach. When Mr. Reese attempted to retrieve he satchel, he was threatened with arrest by Officer Acosta. He was told that he would have to go to the City dump to retrieve his possessions. Mr. REESE then immediately rode his bicycle out to the City dump. When he arrived there, it was closing and he was informed by the staff that everything brought in was destroyed. His property was not abandoned when it was taken by Defendant's employees. He sues on behalf of himself and all similarly situated individuals.

17. Plaintiff REGINALD WILSON is an individual who is homeless and was residing on the streets of the Skid Row area of Los Angeles on March 17, 2011. On that morning, his EDAR was confiscated and destroyed while Mr. WILSON was away from the area for a short while. His property was not abandoned. Everything he had was lost when his property was confiscated and summarily destroyed, including his clothes, hygiene products and personal papers. He sues on behalf of himself and all similarly situated individuals.

**Defendant:**

18. The City of Los Angeles is a municipal entity organized under the laws of the State of California. The CITY is a legal entity with the capacity to sue and be sued. The departments of the City of Los Angeles include the Los Angeles Police Department and the Los Angeles Department of Public Works, employees of which have engaged in the acts constituting the violations of plaintiffs' rights alleged in this action.

**GENERAL ALLEGATIONS**

19. Beginning in February, 2011, CITY employees from the LAPD and the Department of Public Works began seizing and summarily destroying any property they came upon on the public sidewalks of Skid Row without notice to the property owners. When individuals leave their property in the care of others, the CITY seizes it, warning that no one may leave their property, even momentarily, and even if someone else is present and watching the property. The City has posted signs on Skid Row, identifying Los Angeles Municipal Code 56.11 as authority to remove and "dispose" of any property left on the sidewalk. The property so seized is not abandoned and the CITY knows it. Even when individuals are present or return prior to the time that the property is crushed by the skip loader, LAPD officers threaten arrest if the individuals attempt to save their property from destruction. The intent is clear: destroy what little homeless have in this world as a means of forcing them out of the CITY.

20. Each of the acts complained of herein was taken, and each violation of plaintiffs' rights occurred, pursuant to the policies, practices or customs of the defendant CITY, as executed by one or more the subdivisions of the CITY.

21. In doing each of the constitutional violations complained of herein, Defendant CITY, its officials, agents, and employees were acting under color of law.

22. Plaintiffs are informed and believe and on such basis allege that at all times relevant to this action, each of the individuals who seized and destroyed their property were the agents, servants and /or employees of the defendant CITY, and were acting at all times within the scope of their agency and employment and with the knowledge and consent of their principal and employer, the City of Los Angeles.

23. Each plaintiff has timely filed a claim for damages with the defendant CITY, pursuant to Government Code section 910, et seq.

24.   Plaintiffs are informed and believe that the acts complained of herein were done in the furtherance of the customs, policies and practices of authorized policymakers of the defendant CITY and were joined in and/or implemented by the CITY's agents and employees who seized and destroyed Plaintiffs' property. Each of these individual LAPD officers and Public Works employees were acting as the agent and employee in concert with each other. Each of the defendant CITY's agents and employees caused the violation of Plaintiffs' constitutional and statutory rights and the resulting injuries by, among other things, participating personally in the unlawful conduct; by authorizing, acquiescing or setting in motion the policies, plans and actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct, by demonstrating deliberate indifference to the need to maintain adequate training and supervision, and by failing to take remedial and disciplinary action. The CITY was on notice of the need for training in this instance based on the three past legal actions brought against the CITY. Moreover, the confiscation of some of the Plaintiffs' property was reported in the Los Angeles Times when Senior Lead Officer Deon Joseph brought Sandy Banks of the Times on a tour of Skid Row in which he violated the Fourth Amendment rights of the Plaintiff class with impunity by invading their tents without a warrant and without exigent circumstances for the sole purpose of making a point to the reporter.

## CLASS ALLEGATIONS

25.   The individual plaintiffs named above filed claims against the CITY both as individuals and as representatives of the class.   They bring this action pursuant to F.R.Civ.P. 23(b)(2) to certify an injunctive relief class. The class is defined as:

> all individuals who are homeless and reside in the Skid Row area whose personal belongings have or will be taken and immediately destroyed by the agents and employees of the defendant CITY without any notice and

8

opportunity to retrieve the property, which was not abandoned by the plaintiff class members.

25. The class consists of approximately 3,000 individuals, which is the approximately number of individuals who reside in the Skid Row but who have no daytime shelter or other location at which to store their property while they attend to the basics of life, including showering, eating, and obtaining services at various government offices and private facilities. The members of the class are so numerous as to make joinder impracticable.

26. There are common questions of law and fact that predominate over any questions affecting individual class members. Among the common questions of law and fact are the following:

    a. Whether defendant CITY's policies, practices and conduct of seizing and destroying the personal property of individuals who are homeless, without providing any prior notice or an opportunity to retrieve vital personal possessions before they are destroyed violated and continue to violate the class members' state and federal constitutional rights against unreasonable seizure;

    b. Whether these same policies, practices and conduct violated and continue to violate the class members' state and federal constitutional rights to due process;

    c. Whether these same policies, practices and conduct violated and continue to violate the class members' rights pursuant to California Civil Code §§ 52 and 52.1, Civil Code § 2080; and,

    d. Whether injunctive relief should issue to enjoin the policy, practice and conduct of the CITY's agents and employees in seizing and immediately destroying the property of homeless individuals on Skid Row when the property is not abandoned.

27. The claims of the class representatives are typical of those of the class members with respect to the constitutionality and legality of the CITY's policies, practices and conduct at issue here. The prosecution of individual actions against the CITY by individual class members would create a risk of inconsistent and varying adjudications, which would result in variable standards of conduct for defendant.

28. The class representatives will fairly and adequately protect the interests of the class members and are unaware of any conflict among or between the class members that would preclude their fair and adequate representation. Class counsel is an experienced litigator who has brought several class actions on behalf of homeless individuals in the City of Los Angeles, including *Fitzgerald v. City of Los Angeles,* 2003 U.S. Dist. LEXIS 27382 (C.D. CA 2003) (approving attorney fees separate from common fund award to damages class) and *Noe v. City of Los Angeles*, discussed at paragraph 9, above.

**FIRST CAUSE OF ACTION**

**Right to Be Secure From Unreasonable Seizures**

**42 U.S.C. §1983 - Fourth Amendment; Art. 1, §13, California Constitution**

29. Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 28 as though fully set forth hereat.

30. Defendant CITY violated Plaintiffs' Fourth Amendment rights to be free from unreasonable seizure of their property by confiscating and then destroying Plaintiffs' property without a warrant and often under threat of arrest if Plaintiffs attempted to retrieve the property before it was crushed by the skip loader.

31. Defendant's unlawful actions, through the conduct of its employees from the LAPD and the Dept. of Public Works was done with the specific intent to deprive Plaintiffs of their constitutional rights to be secure in their property.

32. Plaintiffs are informed and believe that the acts of the CITY's employees and agents were intentional in failing to protect and preserve their property and that, at minimum, the CITY was deliberately indifferent to the likely consequence that the property would be seized and destroyed unlawfully, based on the past circumstances of similar constitutional and statutory violations of the law.

33. As a direct and proximate consequence of the acts of Defendant's agents and employees, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property and other injury to their person.

## SECOND CAUSE OF ACTION
## Right to Due Process of Law
## 42 U.S. C. §1983, Fifth and Fourteenth Amendments;
## Art. I, §7 Calif. Constitution

34. Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 28 as though fully set forth hereat.

35. Defendant CITY owed Plaintiffs a duty under the due process clause of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, sec. 7 of the California Constitution, and the statutory law of the State of California, to protect the personal property of Plaintiffs that was known not to be abandoned.

36. Plaintiffs had a protected interest in their property. Defendant provided Plaintiffs with no notice that their property was at risk of being seized and/or destroyed. Defendant did not preserve the property and provide any means of reclaiming it in a timely manner, even though Defendant has been put on notice by the Los Angeles Superior Court and the United States District Court for the Central District of California that such notice and preservation of property was required. Even when Defendant was specifically put on notice by one or more of the Plaintiffs that the property was not

abandoned and given an opportunity to cease the seizure and destruction of the personal items of Plaintiffs, Defendant denied Plaintiffs that due process under threat of arrest. Defendant's employees and agents acted pursuant to LAMC 56.11, which, by its plain terms and as applied, fails to provide constitutionally adequate, let alone any, pre- or post-deprivation notice and an opportunity to reclaim the property before it is irrevocably destroyed by the City.

37. Plaintiffs are informed and believe that the acts of the CITY's employees and agents were intentional in failing to protect and preserve their property and that, at minimum, the CITY was deliberately indifferent to the likelihood that the property would be seized and destroyed without due process based on the past occurrences of these same constitutional and statutory violations of the law.

38. As a direct and proximate consequence of the acts of Defendant's agents and employees, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property and other injury to their person.

## THIRD CAUSE OF ACTION
**Violation of Civil Rights: Interference By Threat, Intimidation or Coercion**
**California Civil Code § 52.1**

39. Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 28 as though fully set forth hereat.

40. Defendant's agents and employees have used threats of arrest and intimidation to interfere with Plaintiffs' rights to maintain their personal possessions in the exercise of Plaintiffs' rights secured by the Constitution of the United States, the Constitution of the State of California, and the statutory laws of the State of California.

41. Plaintiffs are entitled to an injunction pursuant to California Civil Code §52.1. Plaintiffs are also entitled to damages pursuant to Civil Code §§ 52 and 52.1.

Plaintiffs have filed tort claims with the defendant CITY on behalf of themselves and all similarly situated persons. Plaintiffs will amend this action to include damages under this provision once they have exhausted their administrative remedies.

## FOURTH CAUSE OF ACTION
## California Civil Code §2080, *et seq.*

42. Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 28 as though fully set forth hereat.

43. Defendant's policies, practices and conduct challenged herein violated California Civil Code § 2080 *et seq.*, in that Defendant's agents and employees failed to protect and preserve the personal property of Plaintiffs and members of the plaintiff class when the property was on the public sidewalk and streets; failed to provide notice that the property had been taken; and failed to provide an opportunity for the owners of the property to reclaim it within a reasonable time. California Code of Civil Procedure § 2080 *et seq.* imposes a mandatory duty to maintain property that is not abandoned.

## FIFTH CAUSE OF ACTION
## Conversion

44. Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 28 as though fully set forth hereat.

45. Plaintiffs were in possession of their personal property at the time that Defendant's agents and employees ordered that the property be seized and immediately destroyed without notice. Defendant's agents and employees unlawfully prohibited Plaintiffs from securing their personal property and the personal property of others left in their care. Plaintiffs were threatened with forcible arrest if they attempted to retrieve their belongings.

46. Defendant and its agents and employees had a duty owed to Plaintiffs to protect their personal property under Los Angeles Municipal Code §52.55 and California Civil Code §§ 2080.2, 2080.4 and 2080.6. Plaintiffs' property was not abandoned at the time that Defendant seized it and immediately destroyed in and Defendant's agents and employees knew that the property was not abandoned. Defendant breached its duty to protect Plaintiffs' personal property when its agents and employees wrongly exerted dominion over the property and denied Plaintiffs' their constitutional and statutory rights.

47. Defendant had no legitimate governmental interest that gave its agents and employees the legal right or justification for confiscating Plaintiffs' property and then immediately demolishing it without prior notice to Plaintiffs and without a procedure to permit Plaintiffs to recover their property, and without fair compensation to Plaintiffs.

48. As a direct and proximate consequence of the acts of Defendant's agents and employees, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property and other injury to their person.

**INJUNCTIVE RELIEF**

49. Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 28 as though fully set forth hereat.

50. A real and immediate difference exists between Plaintiffs and Defendant regarding Plaintiffs' rights and Defendant's duty owed to Plaintiffs to protect Plaintiffs' personal property present on public sidewalks and streets in Skid Row. Defendant's policies and actions have resulted and will result in irreparable injury to Plaintiffs. There is no plain, adequate or complete remedy at law to address the wrongs described herein. Defendant has made it clear that it intends to continue these practices of

confiscating and immediately destroying the property of homeless individuals from the public streets and sidewalks without a warrant and without notice. Unless restrained by this Court, Defendant will continue to implement this policy and practice of confiscating and summarily destroying the personal property of Plaintiffs and members of the plaintiff class.

51. Defendant's acts alleged above violate established constitutional rights of Plaintiffs and Defendant could not reasonably have thought that the conduct of its agents and employees in seizing and destroying Plaintiffs' property was lawful.

52. An actual controversy exists between Plaintiffs and Defendant in that Defendant's agents and employees have engaged in the unlawful and unconstitutional acts alleged herein and intend to continue to do so. Plaintiffs claim that these acts are contrary to law and seek a declaration of their rights with regard to this controversy.

53. As a direct and proximate consequence of the acts of Defendant's agents and employees, Plaintiffs have suffered and will continue to suffer damages through injury to their person and the loss of their personal property, including all of their clothing, bedding, medication, personal papers and other personal possessions, stripping them of the essential Plaintiffs' need for their well-being and personal dignity.

**WHEREFORE**, Plaintiffs pray as follows:

1. For a temporary restraining order, preliminary injunction and permanent injunction, enjoining and restraining defendants from engaging in the policies, practices and conduct complained of herein;

2. For a declaratory judgment that Defendant's policies, practices and conduct as alleged herein, including but not limited to LAMC 56.11, violate Plaintiffs' rights under the United States Constitution, the California Constitution and the laws of California;

15

3. For an order certifying the injunctive relief class pursuant to F.R.Civ.P. 23(b)(2);

4. For damages in an amount to be determined according to proof but in no event less than $4,000 per incident pursuant to Cal. Civ. Code §§ 52, 52.1 and Cal. Government Code § 815.6.

5. For costs of suit and attorney fees as provided by law;

6. For such other relief as the Court deems just and proper.

Dated: November 23, 2014          Respectfully submitted,

                                  LAW OFFICE OF CAROL A. SOBEL

                                  /S/
                                By: CAROL A. SOBEL
                                Attorneys for Plaintiffs